C. P. Evans v. Commissioner. Fay Evans v. Commissioner.
Evans v. Commissioner
Docket Nos. 4911, 4912.
United States Tax Court
1946 Tax Ct. Memo LEXIS 207; 5 T.C.M. (CCH) 306; T.C.M. (RIA) 46095; April 26, 1946
H. E. Kleinecke, Jr., Esq., 903 Medical Arts Bldg., Galveston, Tex., for the petitioners. Stanley B. Anderson, Esq., for the respondent. HARRON MEMORANDUM FINDINGS OF FACT AND OPINION HARRON, Judge: The respondent determined a deficiency of $11,403.95 in income tax against each petitioner for the year 1941. Petitioners do not contest some of the adjustments made by the respondent. There are two issues, (1) whether petitioners are taxable upon income of an alleged family partnership *208 which was credited in the taxable year to a son and two daughters; and (2) whether petitioners sustained a deductible loss arising from the sale of a building. The petitioners, husband and wife, filed separate income tax returns on a community property basis with the collector for the first district of Texas. They reside in Galveston. Findings of Fact The facts which have been stipulated are incorporated herein by reference. Petitioner, Fay Evans, is the wife of C. P. Evans. C. P. Evans will be referred to hereinafter as the petitioner because the issues chiefly relate to him. In 1941 and in prior years, petitioner owned and operated fifteen food stores. Under the community property law of Texas, the stores were the community property of petitioner and his wife. Issue 1. Petitioner, as early as 1919, was employed by Swift & Co., at Yoakum, Texas, as a branch manager. In October, 1919, he resigned and bought a food store in Yoakum. From 1919 to 1927, he purchased seven additional food stores in various towns in Texas with his brother. In 1927 he severed business relations with his brother. Thereafter he purchased and operated food stores on his own account. In 1939, profits *209 from the food stores increased and petitioner prospered. In 1941 petitioner owned 15 stores located in Galveston, Beaumont, Texas City, Alvin, Edna, and Bay City. He conducted business under the name of C. P. Evans Food Stores, as a sole proprietorship. The book value of the entire business was $450,000, which included real estate and buildings having a net book value of $100,000. The capital of the business was carried in the balance sheet as $450,000, "C. P. Evans - Proprietorship". Petitioners have four children whose names and ages in 1941 were as follows: Christine A. Evans, 22 years old; Hazel Faye Evans, 20; Jack S. Evans, 19; and Margaret Jane Evans, 17 years old. At that time all the girls were unmarried. Christine lived with her parents; Hazel attended the University of Texas, at Austin; Margaret attended St. Mary's Hall in San Antonio. Jack, who was married, attended Washington and Lee University, at Lexington, Virginia. On October 6, 1941, petitioner and his wife executed four documents, called bills of sale, by which they purported to give to each of their children an undivided 12 percent interest in all of the personal property in the business of C. P. Evans Food *210 Stores, exclusive of any interest in real property. These documents were delivered to each child. On October 6, 1941, petitioner, his wife, and the four children executed an agreement entitled Articles of Partnership which recited that all of the parties agreed to become partners under the name of C. P. Evans Food Stores beginning on October 6, 1941. The agreement recited, further, that petitioner and his wife had given each child a 12 percent interest in the business conducted under the name C. P. Evans Food Stores, excepting the real estate standing in the name of C. P. Evans; that all of the children "agreed with their father and mother to continue the business as a partnership, and to put into the partnership all of the interests that were given to them; and that the undivided interests in the partnership were 52 percent in petitioner and his wife, and 12 percent in each of the four children." It was provided, further, that the partnership should exist for ten years, unless terminated earlier, and that the death or retirement of any partner should not dissolve the partnership as to the other partners. If a partner died, the surviving partners would succeed to his share and *211 pay to the representatives of the deceased member the book value of the share at the date of death, without any value being placed on the good will of the business. It was provided in the agreement, further, that C. P. Evans, (petitioner), would devote his whole time to the business, and that he would have the sole and exclusive right to manage the business with the assistance of such employees as he deems necessary; that "no other partner shall take any part or in any way interfere in the conduct or management of the business or use the firm name of the partnership or sign his name as a partner therein"; that C. P. Evans would be allowed an annual salary of $8,775; that all contracts, checks, notes, etc., signed by C. P. Evans shall be valid and binding without inquiry "even if drawn to the individual order of C. P. Evans or tendered in payment of his individual obligations"; that C. P. Evans may appoint in his stead any person to exercise his powers on such terms and at such salary as he sees fit. It was provided that if any partner should sell, assign, or encumber his share in the partnership the other partners could terminate the partnership so far as concerns said partner, *212 and his interest should be treated as though he had died, i.e., the other partners would succeed to his interest, as set forth above. It was agreed that the partnership would pay rent to C. P. Evans for the use of real property owned by him in the same amount as he was then receiving from the business as rent. With respect to annual net profits, it was provided that 50 percent should be left in the business in a reserve fund, and should be invested in such manner as C. P. Evans should determine; and that each of the partners could withdraw from time to time his pro rata portion of the remainder of the net profits. Petitioner and his wife filed separate gift tax returns on March 15, 1942, reporting the gifts of the interests in the business to the children. Gift tax was paid. Subsequently, the Commissioner determined deficiencies in gift tax, and the deficiencies were paid. As of October 6, 1941, new books of account for the C. P. Evans Food Stores were opened, and separate capital accounts were opened in the names of the parties to the partnership agreement, according to the respective interests. The capital of the business, $350,000, was credited as follows: To C. P. Evans *213 (and wife), $182,000; to each child, by name, $42,000, each. Separate drawing accounts were opened in the names of the four children and petitioner. October 6, 1941 was the date selected as the beginning of the partnership because it was an accounting period date. The total assets and liabilities of the C. P. Evans Food Stores as of October 5, 1941 were carried on the books at $776,994.52. The assets consisted of cash $22,559.42; inventories, $371,588.11; notes receivable and other current assets, $19,155.90; furniture and fixtures, automobiles and trucks, less depreciation, $102,547.03; prepaid insurance expense $5,337.78; and fixed assets consisting of buildings $180,747.99, and land $91,243.25. When the new accounts were opened for the partnership, all of the above items of assets except buildings and land were carried as assets of the partnership, in the total amount of $521,188.24. The liabilities of the business, on the books, as of October 5, 1941, included notes payable, secured by real estate, in the amount of $147,500. That item was not set up as a liability in the new accounts of the partnership on October 6, 1941. Also, the capital account in the name of C. P. Evans, *214 which was $450,000, prior to the partnership, became $350,000 in the new accounts set up for the partnership. A few adjustments in items in the liability side of the balance sheet of the business were made so that the total liabilities on the books of the partnerships were $521,188.24 as of October 6, 1941, instead of $776,994.52, as of October 5, 1941. The balance sheets of the C. P. Evans Food Stores, as of October 5, 1941, October 6, 1941, December 31, 1941, and December 31, 1942 are incorporated herein by reference. On or about November 10, 1941, assumed name certificates, executed and acknowledged by each of the parties to the agreement dated October 6, 1941, were filed in the offices of the various County Clerks of counties in Texas where any of the stores of C. P. Evans Food Stores were located. Petitioner advised one bank of the agreement, and in the following year, he also informed Dun & Bradstreet of the agreement. A new Social Security number was also obtained. The business used the same stationery for several years which had been used previously, on which was printed "C. P. Evans Food Stores, C. P. Evans owner of Evans Food Stores." Jack attended Washington and Lee *215 University, at Lexington, Virginia, during 1941 and 1942; graduated in 1943, and in August returned to Galveston and became manager of one of the Evans Food Stores there. In 1944, he was manager of the largest Evans Food Stores in Galveston. In 1941 and 1942, Margaret Jane was attending St. Mary's Hall school in San Antonio, Texas. She was married in 1944, and resided with her husband in Florida. In 1941 and part of 1942, Hazel attended the University of Texas. In 1942 she was married, and in 1944 she resided with her husband in Nebraska. Christine was married in 1942 and is living in Galveston. In 1941 and 1942, the disabilities of minority of Hazel, Jack, and Margaret were removed by orders entered in the 56th District Court of Galveston County, Texas. Thereafter, the agreement of October 6, 1941, was ratified in writing by Jack and Hazel, on November 18, 1941, and by Margaret on November 12, 1942. The partnership return for the period October 6 to December 31, 1941, for Evans Food Stores reported net income in the amount of $43,468.96 distributable as follows: C. P. Evans (and wife)
$23,575.84
Christine A. Evans
4,973.28
Margaret Jane Evans
4,973.28
Hazel Faye Evans
4,973.28
Jack S. Evans
4,973.28
*216 Individual returns were filed by petitioners and their four children. Petitioners, husband and wife, and Jack, who was married in 1941, reported income from the partnership on the community property basis. The business had net earnings, after deducting petitioner's annual salary of $8,775, for the years 1942 and 1943, in the respective amounts of $161,908.72 and $182,869.97. At the end of 1941, the distributable shares of net income of the business were credited to accounts in the names of petitioner and his wife and each of the four children, onehalf of the share of each being credited to a capital account, and one-half being credited to a drawing account. From October 6, through December 31, 1941, Christine withdrew $1,176.97 from the business for personal expenditures; Margaret withdrew $318.17; Hazel withdrew $352.63; and Jack withdrew $1,012.07. The Evans Food Stores are operated in the following way: There is a manager in charge of each store, three buyers, one office manager, and two store supervisors. The total number of employees was about 350 in 1941. In addition to income from the sale of merchandise, the stores received income from leased-out departments. There were *217 three delicatessen lunch counters leased out. All the stores except one had leased-out meat markets. Petitioner's principal duties have been to formulate the policies of the business. Prior to October 6, 1941, none of petitioner's children had any substantial assets of their own, and petitioner paid their expenses. Thereafter, the children paid their own expenses from the monies withdrawn by them from the business. None of petitioner's three daughters have ever worked in the business, and, during the taxable year, Jack did not work except for a period of a few days during the Christmas holidays. The agreement which was executed on October 6, 1941, entitled Articles of Partnership, did not create a bona fide partnership recognizable for income tax purposes. The son and the three daughters of petitioners were not bona fide partners with each other or with C. P. Evans, their father, during 1941. Issue 2. On June 19, 1940, petitioner, with community funds, purchased lots 17 and 18 in Block 118 in Bay City, Texas, with improvements thereon, for $7,000. The lots were 25feet X 150feet, and one lot was on a corner. The improvements consisted of a twostory frame house, divided into five *218 apartments. The house had neither basement nor heating plant. The apartments were heated with individual stoves, and there were only two bathrooms for all of the apartments. The house was old and in a run-down condition. From June 19, 1940 to February 19, 1941, petitioner rented the property to various tenants and received as rent therefor, an aggregate amount of $827.76. During this period, petitioner made only a few minor repairs. At the time petitioner entered into the contract to purchase the property, it was represented to him that the apartments were being rented for a total sum of $110.00 per month, but he did not know that the furniture in the apartments belonged to the seller. When the title was about to be closed, petitioner learned that the furniture did not belong to the tenants, and he objected to closing the title. Thereafter, it was agreed between petitioner and the seller that petitioner would be allowed to use the furniture, in renting the apartments, for a period of eight months. After the expiration of this time, however, petitioner was unable to enter into an arrangement with the seller for the continued use of the furniture, and as a result, he was required *219 to give notice to the tenants to move. Subsequently, petitioner refused an offer of $50 per month to rent the property unfurnished. He also was offered $55 per month on condition that extensive repairs be made by him, but he declined to do this because the cost of such repairs would have amounted to two or three years rent. No depreciation on the property was claimed by petitioners in their income tax returns for 1940 and 1941. On May 5, 1941, petitioner sold the building located on the lots for $522.50 on condition that the purchaser remove the building from the lots by June 20, 1941. The purchaser demolished the building and removed the material. Since that time, no use has been made of the land except to rent sign-board space at the rate of 50 cents a month. When the building was sold by the petitioner, it was in approximately the same condition as when bought. Lots 17 and 18 in Block 118 were located one block east of the C. P. Evans Food Store in Bay City. The food store was located in the business section of the city, and was held by petitioner under a lease. At the time petitioner acquired lots 17 and 18, he did not know whether he would be able to renew the food store lease, *220 and his principal reason for purchasing the lots was to have a location in Bay City for the operation of a grocery store in the event that he was unable to secure a renewal of the food store lease. That lease was made in 1935 and expires on April 30, 1945. During the first five years of the term, the rental was $90 per month and the lease was binding on both parties. During the second five years, the rental was $100 per month, but petitioner could cancel the lease at his option. At the date of the hearing, petitioner was still negotiating for a renewal of the lease, and the landlord was asking $225 a month. On their returns for the taxable year, petitioners claimed a loss deduction of $4,477.50, in connection with the sale of the building, based upon "cost" of $5,000. Petitioner allocated $5,000 to the building of the $7,000 paid for the lots and the building on June 19, 1940. Respondent disallowed the entire amount of the deduction. Petitioners did not sustain a loss in 1941 in the amount of $4,477.50, upon the sale of the building for $522.50. Opinion HARRON, Judge: Issue 1. Since the petitioners are husband and wife, residing in a state where the property rights of spouses *221 are subject to a community property law, the petitioners report income on the community property basis, and one-half of the taxable income is taxed to each spouse. While respondent's determination in these proceedings relates only to the income of the C. P. Evans Food Stores business, which was reported in the separate income tax returns for the four children of petitioners, respondent having determined that petitioners are taxable on such income, we understand that respondent does not recognize any partnership during 1941 consisting of the members of the family of C. P. Evans. Respondent's determination is stated as follows: It is held that C. P. Evans Food Stores is not a partnership for the purpose of the income tax, and the amount reported by your son and daughters is held to be taxable to you. The reporting of income by petitioners on the community property basis is, therefore, the reason why, in this case, part of the income of the food stores business is taxed to petitioner's wife, Fay Evans. That it is so taxed does not represent a recognition by the respondent of a partnership consisting of C. P. Evans and Fay Evans. Respondent's contention is that there was no partnership *222 for income tax purposes, but that the food stores business was conducted as a sole proprietorship by C. P. Evans throughout the entire year 1941. Since, for the reasons stated above, the respondent's determination has been limited, of necessity, to the part of the income which was reported by the four children, the question is discussed, of necessity, with reference to the four children. The question is whether the income reported by the four children should be included in the income of C. P. Evans and Fay Evans, husband and wife, and taxed to them under the community property method of taxing income. The question arises under section 22(a) of the Internal Revenue Code. Respondent contends that the income in question is not taxable to the four children, but is taxable to petitioners. He relies, in general, upon the doctrine of Helvering v. Clifford, 309 U.S. 331; Harrison v. Schaffner, 312 U.S. 579; Helvering v. Horst, 311 U.S. 112. He relies more particularly on A. L. Lusthaus, 3 T.C. 540; aff'd, 149 Fed. (2d) 232; aff'd, 327 U.S. 293 (Feb. 25, 1946); M. M. Argo, 3 T.C. 1120; *223 aff'd, 150 Fed. (2d) 67; certiorari denied, 326 U.S. 762, (Nov. 5, 1945); Schroder v. Commissioner, 134 Fed. (2d) 346. The solidarity of the family readily lends itself to the design of an ostensible surrender of title to another with the retention of the substance of enjoyment by the donor. It is for this reason that "special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, tough valid under State law, are not conclusive so far as section 22(a) is concerned." Helvering v. Clifford, supra.The fundamental principle which must be followed in determining the validity, for tax purposes, of transactions between members of a family is that there must be a correspondence between the legal concept of ownership and the economic realities of enjoyment of fruition. Burnet v. Wells, 289 U.S. 670. See also Doll v. Commissioner, 149 Fed. (2d) 239; certiorari denied, 326 U.S. 725, October 8, 1945. When this principle is applied to the facts of this proceeding as they existed in the taxable year, it is apparent that *224 petitioner retained the substance of the enjoyment of the property which he allegedly have to his children. The children, with the exception of Christine, were away at school, and petitioner was paying their expenses. He was also paying Christine's expenses. After the so-called partnership agreement was executed, the children used some of the partnership profits to pay the expenses which petitioner had previously paid. The evidence is uncontroverted that none of the children rendered any substantial service to the business during the taxable year. Although petitioner contends that the children were partners, they had little of the attributes which a partner normally possesses. The agreement specifically provided that "no other partner", except C. P. Evans could take any part in the conduct or management of the business, or use the firm name of the partnership, or sign their names as partners. Petitioner's authority to conduct the business after the agreement was executed was coextensive with that which he had when the business was operated as a sole proprietorship. He directed and managed the business; he formulated and executed the policies of the business; he was the personality *225 of the business. The execution of the formal documents on October 6, 1941, did not result in any change in petitioner's activities in the business. The business was continued just as before. During the taxable year, and for several years thereafter, the stationery used by C. P. Evans Food Stores indicated that petitioner was the sole proprietor. It is also noteworthy that under the partnership agreement, petitioner alone had the right to invest 50 percent of each year's profits in any manner he might determine. The facts, as a whole, indicate that petitioner intended only to assign to each of his children 12 percent of one-half of the net annual profits of the business, or 6 percent of the net profits. The effect of the agreement created little change in petitioner's economic position during the taxable year. His income was more than sufficient for his needs, and the arrangement reallocated a portion of that income among his intimate family group, so that, in effect, the expenses of the children which he had previously paid from one pocket were merely paid from the other pocket. The agreement was designed to leave him in the position to apply his personal skill in respect to the *226 business the same as before the agreement was executed, and he retained "the enjoyment of being able to play the commercial game with the property, and the satisfaction of continuing to vindicate his business skill with it * * *" Edison v. Commissioner, 148 Fed. (2d) 810; certiorari denied, 326 U.S. 721, October 8, 1945. However, there is a further reason why respondent must be sustained in his determination. Income is taxable, under the revenue statutes, to the one who earns or otherwise creates the right to receive it, and in applying those statutes, substance, and not form, is controlling. "When the income is from combined labor and capital, a test is the personality who or which 'produced' the income. ( Burnet v. Leininger, 285 U.S. 136, 141." Doll v. Commissioner, supra.It would seem apparent that much of the income of the business during the taxable year was attributable to the personal skill and business acumen of petitioner. He had built up the business from its small beginnings and formulated its policies. It was he who determined when and where new stores were to be acquired. Although he received an annual salary, for *227 all practical purposes, that salary was merely a drawing account. Of course, capital was important to the business, but it cannot be said that the alleged capital contribution of each child required a proportionate sharing of the profits. The gifts to each child did not include any of the real estate used in connection with the business. Yet, this was an important factor in determining the annual profits. Probably the most important element in the operation of food stores is the location of such stores. Petitioner, by withholding from the gifts the real estate used in the operation of the stores, retained such control over the business as to be substantially its owner. The principal subject of the gifts was inventories in the amount of $371,588.11 and furniture and fixtures valued at $171,100.59. Certainly, it cannot be said that, for tax purposes, an alleged 12 percent interest in these items was equivalent to a 12 percent interest in profits which were the result of other assets, and personal services, particularly when the alleged partners could withdraw only 6 percent of earnings. A good part of the income of the business was derived from leased-out departments and such income *228 resulted primarily from the location of the stores and not from the inventories. The burden of proving the proper allocation of profits from the capital alleged to have been contributed by the four children is upon petitioner, and he has not sustained that burden. We think that the so-called partnership was ineffective to shift tax upon part of the income of the food stores business to the four children. Since these proceedings were submitted, decision has been given by the Supreme Court in Commissioner v. Tower, 327 U.S. 280, (decided Feb. 25, 1946). The Supreme Court said in its opinion, in part, as follows: A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade or business and when there is a community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits and losses or both. And their intention in this respect is a question of fact, * * *. Upon the facts *229 of record, we cannot find as a fact that the four children joined with their father, C. P. Evans, with any real intention of carrying on the business of the C. P. Evans Food Stores, and sharing in the profits and losses. The children, occupied with their pursuits of an education and all of the activities of their young lives, inexperienced in business and unprepared for serious participation in the buying and selling of food products and the leasing of store space, were not engaged in any business in 1941 with their father. They did not contribute services. They had no separate cash or property to contribute to the business; they contributed nothing. Under all of the facts and the circumstances it is held that respondent's determinations under this issue are sustained. See Camiel Thorrez, 5 T.C. 60; Lewis Hall Singletary, 5 T.C. 365; Lillian R. Chertoff, 6 T.C. 266; Henry F. Haldeman, 6 T.C. 345; Clarence L. Fox, 5 T.C. 242. Cf. William F. Fischer, 5 T.C. 507. Issue 2. Petitioner took a deduction for a loss in the return for 1941 in the amount of $4,477.50. He claimed that a loss in the above amount *230 was sustained when he sold the building on the Bay City lots for $522.50 on June 20, 1941. The loss was disallowed. On brief petitioner contends that he is entitled to a loss resulting from the sale of the building under section 112(a) of the Internal Revenue Code. He contends that $5,000 is the basis for the purpose of determining the amount of the loss. Respondent denies that the basis was $5,000. He contends that the basis was not more than $522.50, the amount received upon the sale, and that, therefore, petitioner did not sustain a loss upon the sale of the building. The burden of proof is upon petitioner to prove that he sustained a loss upon the sale of the building and that he sustained a loss in the amount which he has claimed in the 1941 return, or in some other amount. Petitioner has failed to meet his burden of proof. Petitioner paid $7,000 for the Bay City property and its improvements on June 19, 1940. He has allocated $5,000 thereof to the building as its basis. He may not make an arbitrary allocation of part of the cost of the entire property to the building. He did not present in evidence the opinion of any expert in real estate and building *231 values on the value of the building in 1940 on the date of purchase. Petitioner is not a qualified expert on the valuation of real property and buildings. His opinion that the proper basis of the building is $5,000 is not, in our opinion, entitled to very much consideration, and the limited evidence before us does not support his opinion. The evidence indicates that the building was old when acquired in 1940. Petitioner testified that he had made no effort to ascertain when the building was constructed. Petitioner admits that the building was in the same condition when it was sold in 1941 that it was in when it was acquired in 1940. Upon the evidence before us, it is impossible to fix any amount as the basis of the building for the purpose of computing the amount of the loss sustained upon the sale thereof. Respondent, on brief, contends that the basis was not $5,000, and that petitioner has not established that the cost attributable to the building is in excess of $522.50, upon the evidence adduced at the trial. Respondent's argument on this question is that petitioner has failed to meet his burden of proof. We agree with that contention. It is held that petitioner has failed *232 to prove that he sustained a loss of $4,477.50 or any other amount upon the sale of the building in 1941. Decision will be entered for the respondent.