ANNA MORGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SAMUEL MORGAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5699, 5700. Promulgated November 26, 1945.

*Earl Susman, Esq.,* for the petitioners.
*Gene W. Reardon, Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* These proceedings are brought for redetermination of deficiencies in income tax as follows:

|  | 1940 | 1941 | Total |
|---|---|---|---|
| Anna Morgan | $604.98 | $1,364.66 | $1,969.64 |
| Samuel Morgan | 1,497.59 | 1,746.75 | 3,244.34 |

The proceedings challenge respondent's inclusion under Internal Revenue Code, section 22 (a), in the respective petitioner's taxable income of income from four trusts of which they were grantors. In making the determinations of deficiencies, respondent allocated the

trust income to the petitioners upon the basis of the percentage of principal transferred by each petitioner to the respective trusts.

All of the facts are stipulated and are hereby found accordingly. They are substantially as follows:

Petitioners, husband and wife, are individuals residing in Clayton, Missouri. They filed separate income tax returns for the taxable years here involved with the collector of internal revenue for the first district of Missouri.

On October 1, 1937, petitioners, as grantors, executed four trust indentures, one each for their four children, Edith Morgan Frank, Frieda Morgan Ferman, Daniel Morgan, and Charles Morgan. Edith Morgan Frank was born October 14, 1915, was married on June 15, 1937, and attained the age of 21 years on October 14, 1936. Frieda Morgan Ferman was born on May 6, 1917, was married on January 12, 1941, and attained the age of 21 years on May 6, 1938. Daniel Morgan was born on November 22, 1918, was married on July 30, 1940, and attained the age of 21 years on November 22, 1939. Charles Morgan was born on January 31, 1925, is unmarried at this time, and will attain the age of 21 years on January 31, 1946, and has at all times material hereto lived with his parents. Edith Morgan Frank has two children, born September 12, 1938, and October 4, 1940. Daniel Morgan and Frieda Morgan Ferman each have one child, born July 7, 1941, and September 27, 1944, respectively. None of the three married children resided with their parents during the years.1940 and 1941.

At the time of the execution of the trusts petitioner Samuel Morgan transferred 50 shares, par value of $100 per share, of the preferred capital stock of Guaranty Motor Corporation, a Missouri corporation engaged in the loan business, to each of the following three trusts: Frieda Morgan Ferman trust, Charles Morgan trust, and Daniel Morgan trust. At the same time petitioner Anna Morgan transferred $500 in cash to each of the four trusts. Immediately after the trusts were created the securities transferred were registered in the names of the trustees. On January 3, 1938, petitioner Samuel Morgan transferred 50 shares of preferred stock of Guaranty Motor Corporation to each of the four trusts. The name of Guaranty Motor Corporation was subsequently changed to Local Finance Co. The preferred stock involved was nonvoting stock.

Substantially all of the net income of the trusts has been invested from time to time in additional preferred capital stock of Local Finance Co., and the assets held in each of the four trusts during the years 1940 and 1941 consisted solely of the preferred stock, 2½ shares of the common stock of Safe-Way Finance Plan, Inc., a Missouri corporation, held in each of the four trusts, and small amounts of cash not currently invested.

The four indentures of trust are identical except as to the name of the primary beneficiary. Petitioners are cotrustees of each of the four trusts.

The indentures recite petitioners' desires to create irrevocable trusts, and the transfer of property by them to themselves as trustees. The trustees' duties with respect to the management of the trusts stated that they were to receive and hold all income and increase of the trust estate; that in making the investments they should give primary consideration to the safety and security of the investment; that they should consider all cash dividends to be income; that they should consider all stock dividends, warrants, and subscription rights to be corpus or principal unless advised by counsel that such action would result in illegal or taxable accumulation, in which event they should have power to distribute the dividend or warrant to the parties entitled to that portion of the assets; that they should render an annual accounting to adult beneficiaries or to the guardian of minor beneficiaries.

The trust indentures further recited that the trustees should have the power, as and when they in their absolute discretion should deem best or advisable, to acquire as assets of the trust estate securities, notes, deeds of trust, and other real or personal property; to deal with the trust assets in practically any manner; to cause trust property to be registered or held of record in the joint or several individual names of the trustees; to cause the organization of such corporations as they should deem proper and transfer thereto any or all of the assets of the trust estate, retaining all of the capital stock as trust assets, but permitting such stock to be held of record in the names of their nominees to qualify directors; to vote any corporate stock or enter into agreements with reference to reorganization or merger, or consent to the dissolution of any corporation in which the trust held stock; to hold compensating offices or positions in or with corporations or businesses in which the trust may have an interest or investment; "to vote as trustees to elect themselves as individuals to such offices and positions and to fix their own compensation incident to such offices and positions; and to retain such compensation for their personal use and benefit"; to remove liens from trust assets; to borrow money and pledge security therefor; to participate in legal proceedings; to compromise claims involving the trust estate; to employ legal counsel, accountants, and such other assistants as in their opinion should be reasonably necessary or advisable; "to apportion between principal and income any loss or expenditure which, in their opinion, should be apportioned, notwithstanding any legal or equitable rule to the contrary"; to use trust corpus in their absolute discretion in amounts necessary for the proper maintenance, support, care, or education of any beneficiary, only if both grantors were financially unable to pro-

vide such maintenance, support, care, and education; to make distributions of income at the time and in the amounts they should deem convenient and practicable; to transfer to the respective primary beneficiaries, if living, or to further beneficiaries as hereinafter stated, any or all of the principal and income of the trust estate, notwithstanding any other provisions of the indenture, if any tax laws imposed taxes upon the trust or its income or upon the beneficiaries if the trustees should be of the opinion that the tax imposition would constitute an unreasonable or immoderate burden upon the trust or its beneficiaries, and their opinion on this was to be final and conclusive; to make the distributions of principal or corpus provided by the indenture in any proportions of cash or property "as selected, apportioned and evaluated" by the trustees, and their actions in this respect were conclusive; to treat with the property of the trust in all matters as "if they were the owners thereof as individuals."

The trust indentures further provided that the trustees should permit the net income of the trust to accumulate and in their discretion invest the accumulations until the primary beneficiary reached the age of 30, after which they were to pay the entire net income of the trust to the beneficiary for life, but in their discretion they could pay the primary beneficiary only the amount which would be sufficient for proper and suitable maintenance, support, and care of the primary beneficiary and his children, "having due regard for the other finances and income of" the primary beneficiary and spouse, if any. It was provided that upon the death of the primary beneficiary, whether or not he had attained the age of 30, the trust should continue for the maintenance, support, care, education, and benefit of the then living children of such beneficiary, provided that if there were two or more children surviving, the primary beneficiaries' shares should be divided and held for such children or their child until the beneficiaries' children should attain the age of 21; that if there were no child or grandchild of the beneficiary surviving, all the assets of the trust estate were to be distributed free of trust to the living brothers and sisters of the beneficiary or their children, failing which, to the heirs at law of petitioner Samuel Morgan.

It was provided that, with respect to every trust estate held for the benefit of a child of the primary beneficiary, the trustees in their discretion should expend what they deemed necessary of the net income for the maintenance, support, care, and education of such child until he reached the age of 21, and thereupon convey the entire trust estate to such beneficiary. Additional provisions were made for gifts over in the event of the decease of a child of a primary beneficiary after the death of the primary beneficiary but during the continuance of the trust.

The trust indentures contained spendthrift provisions.

They further provided that, on the "inability, failure or refusal" of petitioner Anna Morgan to serve as trustee, petitioner Samuel Morgan was to serve as sole trustee of the trusts; that, in the event of the inability, failure, or refusal of petitioner Samuel Morgan to serve as a trustee, the Missouri Valley Trust Co. should serve with petitioner Anna Morgan as cotrustee; that should neither Anna nor Samuel Morgan serve as trustees, the Missouri Valley Trust Co. should serve as sole trustee.

The trust indentures provided that the trustees should receive a sum equal to 5 percent of the reasonable market value of property distributed by them as trustees.

The trust indentures further provided that, notwithstanding any other provisions of the indentures, the trustees "in their absolute discretion and without any liability whatsoever" might retain as trust investments any and all property transferred to the trust and should not be required for any reason to convert the property into cash or other forms of investment unless in their discretion they should deem it to be for the best interests of the trust estate; that any successor trustee might accept as conclusive the accounting of all former trustees.

Petitioners could make additional contributions to the trusts unless the trustees regarded such contributions as liabilities or potential liabilities.

It was recited that the trusts and their provisions should be irrevocable "provided, however, that said trusts may be terminated in accordance with the terms and provisions of the within instrument."

Petitioners, either individually or as trustees of the four trusts, owned all of the outstanding preferred stock of the Local Finance Co. except 35 shares of preferred stock transferred to each of the three children during the year 1941. The 250 outstanding shares of common stock of Local Finance Co., which carried the voting rights, were and are held as follows: Petitioner Samuel Morgan, 247 shares; petitioner Anna Morgan, 1 share; and 1 share each to 2 nominees or straw parties. Petitioner Samuel Morgan is president, and both he and his wife are directors, of the Local Finance Co.

The shares of outstanding preferred stock of Local Finance Co. on January 1, 1940, December 31, 1940, and December 31, 1941,* were held as follows:

| | Samuel Morgan | Anna Morgan | Frieda Morgan Ferman trust | Daniel Morgan trust | Charles Morgan trust | Edith Morgan Frank trust |
|---|---|---|---|---|---|---|
| 1/1/40 | 730 | 490 | 285 | 285 | 285 | 225 |
| 12/31/40 | 855 | 580 | 307 | 307 | 307 | 243 |
| 12/31/41 | *715 | 627 | 331 | 331 | 331 | 262 |

*During the latter part of the year 1941, Samuel Morgan transferred 35 shares of preferred stock to each of his 4 children individually.

The preferred stock of Local Finance Co. is 8 percent nonvoting stock, and the total amount thereof issued and outstanding on December 31, 1941, was 2,737 shares. There was no common stock of Local Finance Co. held in any of the trusts.

During the years 1940 and 1941 petitioners, as trustees, held 2½ shares of the stock of Safe-Way Finance Plan, Inc., for each of the four trusts. The only issued and outstanding capital stock of Safe-Way Plan, Inc., a Missouri corporation engaged in the loan business, consisted of 20 shares of common capital stock, par value $100 per share. The balance of the outstanding capital stock of Safe-Way Finance Plan, Inc., was held, 5 shares by petitioner Samuel Morgan and 5 shares by petitioner Anna Morgan. No dividends were paid on such stock during either of the years 1940 and 1941.

All of the stock certificates held in trust have been held in the name of petitioners as trustees under the several indentures of trust with specific reference to the respective beneficiaries of the trust. At all times herein material a separate bank account was maintained for each trust in the names of the trustees and separate books of account were maintained for each of the trusts. During all of the taxable years involved the trustees returned all of the trust income of each of the trusts in separate income tax returns.

The aggregate trust income of the four trusts amounted to $8,619.62 in 1940 and $9,481.97 in 1941, which respondent has allocated as follows:

|  | 1940 | 1941 |
|---|---|---|
| Samuel Morgan | $3,113.10 | $3,424.99 |
| Anna Morgan | 5,506.52 | 6,056.98 |

For the year 1940 petitioner Samuel Morgan received a salary of $24,000 and dividends of $25,606.64 from Local Finance Co. For the year 1941 petitioner Samuel Morgan received a salary of $12,000 from Safe-Way Finance Plan, Inc., and a salary of $12,000 and dividends of $6,560.01 from Local Finance Co. Petitioner Anna Morgan received dividends of $4,223.34 for 1940 and $4,728.66 for 1941 from Local Finance Co.

For all of the taxable years involved petitioner Anna Morgan usually took no direct action as trustee. Petitioner Samuel Morgan was usually dominant in all of the activities of the trusts and in the management thereof. In all matters relating to the trusts and their management Anna Morgan usually relied on Samuel Morgan, the other trustee. All investments of the trusts were made by Samuel Morgan, usually without consulting Anna Morgan. All of the many other duties and functions of the trustees, except those which were

peculiarly formal, were generally discharged and performed by Samuel Morgan.

In the aspect of the present proceedings that petitioners were in a position to accumulate trust income, add it to principal, and thereby succeed in changing the recipient from the income beneficiary to the remainderman,[1] the situation is similar to that in *Louis Stockstrom*, 3 T. C. 255; affd. (C. C. A., 8th Cir.), 148 Fed. (2d) 491; certiorari denied, —— U. S. ——, (Oct. 8, 1945) ; and see *Stockstrom* v. *Commissioner* (C. C. A. 8th Cir.), 151 Fed. (2d) 353. The broad powers of management and control in the grantors as trustees were similar here to those existing in the *Stockstrom* case.

In one respect, however, they appear actually to be more extensive. Unlike those circumstances, the subject matter of the present trust was stock of corporations in which the petitioners were actively interested. To illustrate the extent of this factor and the possibility of its use for the realization of actual economic gain, the situation with respect to Safe-Way Finance Plan, Inc., one of the corporations, may be noted briefly. Not much appears as to its operation, the business in which it was engaged, the history of the company, nor the means by which its stock was acquired by the trusts, except that it, like petitioners' other company, was engaged in the loan business. But it does appear that only 20 shares of common stock were outstanding, of which half were held by petitioners and the other half were in the trusts. It follows that without the trust stock petitioners would not have had a majority nor presumably have been in a position to exercise complete control. Nevertheless, with the stock distributed as it was, we find from the stipulation that petitioner Samuel Morgan was the only member of the family to receive any economic benefit from this company in the year 1941, since it paid no dividends, but he received a salary of $12,000. This situation consequently presents an instance of the retention of corporate control by means of the creation of a trust, *Frederick B. Rentschler*, 1 T. C. 814; see also *Edison* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 810; *Funsten* v. *Commissioner* (C. C. A., 8th Cir.), 148 Fed. (2d) 805; and it is to be distinguished from such cases as *David Small*, 3 T. C. 1142, where no alteration in the voting potential resulted from the trusts.

No point is made of the fact that in the tax years only one of the children of petitioners who were the trust beneficiaries was still a minor. But in any event the others had apparently reached their majority, married, and established separate homes after the trusts were created, with one possible exception, and control was retained

---

[1] While the provisions of the trust instrument may not be as clear as could have been desired in this respect, this appears to be the construction adopted by petitioners throughout their briefs, e. g., *"The rights to distribute or accumulate trust income did not result in any economic gain to petitioners."* [Reply brief, p. 10 ; emphasis added.]

by the grantors until the beneficiaries should reach 30, which was not yet the case as to any of them. We are unable to conclude that these circumstances indicate the absence of the family solidarity aspect of the *Clifford*[2] rule. See *Commissioner* v. *Woolley* (C. C. A., 2d Cir.), 122 Fed. (2d) 167; certiorari denied, 314 U. S. 693; *Commissioner* v. *Barbour* (C. C. A., 2d Cir.), 122 Fed. (2d) 165; certiorari denied, 314 U. S. 691. Their significance must be viewed in the light of other facts. Here, for example, the beneficiaries of the trusts set up by petitioners constituted all of the members of the petitioners' immediate family. They had no more intimate family group. The fact that the beneficiaries had since established households of their own is not shown to have affected the intimacy of the family group. We conclude that the fact that the beneficiaries of these family trusts established their own homes after the creation of the trusts does not, when considered in the light of all the other circumstances, prevent the application of the doctrine of *Helvering* v. *Clifford* in considering the taxability of the trust income in years subsequent to the marriage of the beneficiaries.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

[2] *Helvering* v. *Clifford,* 309 U. S. 331.