LILLIAN R. CHERTOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE J. CHERTOFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4382, 4383. Promulgated February 27, 1946.

*Lawrence M. Rich, Esq.*, for the petitioners.
*Thomas F. Callahan, Esq.*, for the respondent.

269

272

OPINION.

HILL, *Judge*: The first issue is whether the petitioners are taxable on the income of the trusts created by them in 1937 and 1940. If respondent is correct in his contention that the petitioners are so taxable, we need not consider whether they are likewise so taxable in 1940 and 1941 under the partnership aspects of the case. Respondent contends that the petitioners are taxable on the income of these trusts under section 22 (a), Internal Revenue Code, as construed in *Helvering* v. *Clifford*, 309 U. S. 331, and that in any event the income is taxable to them under sections 166 and 167 of the code. Petitioners contend that they have parted with all vestige of ownership and control over the trust properties and that they have no legal power to recapture the corpus of the trusts or to use the income thereof for their own purposes. They insist that any powers given to them by the trust agreements are powers in trust and that they should not be treated as the real owners of the trust property or income, *Estate of Benjamin Lowenstein*, 3 T. C. 1133. They further contend that because the various trusts are separate entities the partnership formed in December 1940 is valid and entitled to recognition for Federal tax purposes.

On September 15, 1937, petitioner Chertoff created a trust for each of his three children with a corpus of 150 shares of the stock of the Synthetic Products Co., a corporation. At that time the corporation had 900 shares of stock outstanding. He owned 451 shares and his wife owned 449 of such shares. Chertoff and Mrs. Chertoff were made trustees of each trust. The children were minors when the trusts were created and were also minors during the tax years here involved. Chertoff controlled the corporation in all its operations prior to the creation of the trusts and continued to exercise such control subsequent to such creation. He held in his own name only one share of the corporation's stock after creation of the trusts, but obviously his control of the corporation was not minimized or otherwise affected by his transfer in trust to himself and Mrs. Chertoff of 450 shares of his original holding of 451 shares. Chertoff and Mrs. Chertoff, as holders of stock individually and as trustees of the trusts which Chertoff created in 1937, were in complete control of the corporation, of whose

stock they owned individually only 50 percent. Under such control Chertoff continued to receive large amounts as compensation for services to the corporation by virtue of agreements between him and the corporation. Chertoff's compensation for services to the corporation for 1937 and the two preceding years totaled $44,500. His compensation for such services for 1938, 1939, and 1940 totaled $62,581.08.

The instrument provides for the termination of the trust upon the happening of either of the following four specified events: (1) Request of the beneficiary at or at any time after he becomes 30 years of age for the conveyance to him of the trust property; (2) alienation of the trust income or principal by the beneficiary, or the latter's bankruptcy, or any other event whereby the benefits should wholly or in part cease or fail to be enjoyed by the beneficiary; (3) the payment at any time in the sole discretion of the trustees to the beneficiary or his legal guardian of the principal of corpus of the trust; and (4) the death of the beneficiary, provided neither of the specified events (1), (2), or (3) has occurred.

The trust provides that upon the death of the beneficiary the principal and any accumulation of income shall be paid to the beneficiary's appointee under his last will and testament or other valid written instrument, or, if no such appointment has been made, then to petitioners, George J. and Lillian R. Chertoff, in equal shares or to the survivor of them. This same provision as to the devolution of the trust property is made applicable by the trust instrument in the case of termination of the trust under the above specified event numbered (2).

Since the beneficiary would be under legal disability to make a valid appointment by will or otherwise during his minority, it is apparent that in the event of his death during minority the trust corpus with the accumulation of any trust income would go in equal shares to Chertoff and Mrs. Chertoff or *in toto* to the survivor of them. In this connection attention is directed to the stipulation that all moneys which have been collected under the trust have been retained in the trust. The stipulation further shows that the income of the trust for each of the years 1937, 1940, and 1941 was reported as the income of the trust and that the tax shown to be due thereon was paid by the trust. In other words, all of the trust income has been accumulated and none has been distributed to the beneficiary. It appears, therefore, that the death of the beneficiary during his minority or in the event of his death after reaching his majority without having exercised validly his power of appointment as to the trust property, the corpus and accumulated income of the trust would devolve upon the petitioners or the survivor of them. Also, the same devolution would result in the case of the termination of the trust by virtue of the above specified event numbered (2) in the absence of a valid exercise of the power of appointment by the beneficiary.

The power of petitioners as trustees to terminate the trust at any time is inherent in the trust provision under which the trustees may "in their sole discretion pay to the beneficiary hereunder or his legal guardian from the principal from time to time such sum or sums as said trustee may deem advisable without restriction as to use or purpose." By the exercise of this power the trustees may entirely eliminate the beneficiary's appointee as a remainderman or may reduce as they choose the amount of trust property which shall go in remainder to such appointee. Also, by the exercise of such power the trustees may pay to themselves as guardians of the beneficiary during his minority a part or the whole of the principal of the trust (including therein the accumulated trust income) and devote such payments to any use or purpose without restriction, including the discharge of their parental obligation to support, educate, and maintain such minor, as well as the carrying on of business enterprises completely controlled and managed by petitioners to their economic benefit. In such case petitioners' powers as guardians in relation to such funds would be as broad as their powers as trustees.

In view of the above enumerated provisions of the trust it appears that if the beneficiary should die before he attains the age of 21 years the corpus of the trust and the accumulated income thereon would be paid in equal shares to the petitioners or *in toto* to the survivor of them, since the beneficiary can not make a valid appointment during his minority. Should the beneficiary die before reaching the age of 30 years without having made a valid appointment the corpus of the trust and the accumulated income would likewise be paid to petitioners in equal shares or *in toto* to the survivor of them. Also, should the beneficiary die, having made a valid appointment, the appointee would receive the corpus and the accumulated income. In neither of the events enumerated will the beneficiary receive the corpus or the accumulated income of the trust, or the current income thereof, unless petitioners as trustees choose to pay it to him, notwithstanding that the trust instrument purports to confer upon him at least a life estate in the trust property.

During the taxable years here involved the beneficiaries of the various trusts were minors. Under the law of Ohio a husband and wife living together are the joint natural guardians of their minor children and are equally charged with their care and welfare, as well as the care and management of their estates.[1] In addition, Ohio seems to follow the common law rule that a father has paramount right to the custody of his minor children and, further, can name a guardian for them by will. See *In re Coons*, 20 O. C. D. 208; sec. 10507-13, Pages' Ohio General Code, Ann.

The trust instruments provide that the petitioners, as trustees, may pay the income to the beneficiary of the trust or his legal guardian

[1] Sec. 10507-8, Pages' Ohio General Code, Ann.

without restriction as to its use or purpose. They are further granted the power in their sole discretion to pay to the beneficiary or *his legal guardian* such part of the principal as they may deem advisable without restriction as to its use or purpose. Petitioners seek to make quite a point of the fact that neither of them is the "legal" guardian of their children. Inasmuch as in Ohio a natural guardian has the care and management of a child's estate and a legal guardian has the same rights and powers, we can not agree that the use of the term "legal guardian" in the trust instruments has any real significance.[2] The record does not disclose and petitioners disclaim the appointment of a legal guardian for the beneficiaries of the trusts. In such situation it appears that under Ohio statutes the petitioners are natural guardians of their minor children, with the powers of a legal guardian as to their estates. Therefore, each of the petitioners is grantor in three of the trusts, is a cotrustee in all of the trusts, and has the status of legal guardian of the estates of the beneficiaries.

The three trusts which petitioner Lillian R. Chertoff created on December 12, 1940, are identical with the George Chertoff trusts in respect of their terms and provisions. Hence, a discussion of such terms and provisions as to any one of the trusts applies equally to the others. Each of these latter trusts was created with a corpus of 75 shares of stock of the Synthetic Products Co. after the resolution to dissolve the corporation was passed and only five days before the dissolution became effective. By the provisions of the trust agreements petitioners are given absolute discretion in the control and management of investments. They are not accountable as ordinary trustees would be under similar circumstances. It would be difficult to formulate or visualize broader administrative powers in respect of the trust properties and investment and reinvestment of trust funds than those invested in the trustees herein. In so far as the powers of management of the trust estates are concerned, they are practically the same as those which an individual might exercise over his own property. These powers were availed of to serve the economic interests of Chertoff.

It is stipulated that when it was determined to liquidate and dissolve the corporation in December 1940 the net assets thereof were sold to George. The sale to Chertoff was effected, as shown by entries on the books of the corporation, at the price of the net book value of the assets. The method of arriving at such net value is disclosed by a balance sheet contained in the stipulation of facts.

The purported transactions covering the sale of the corporation's net assets to George Chertoff, the liquidating distribution to the stockholders, the taking over of the corporation's debts, assets, and business

---

[2] Secs. 10507–7 and 10507–8, Pages' Ohio General Code, Ann.

by the partnership, and the investment accounts in the partnership were effectuated solely by the closing book entries of the corporation and, simultaneously therewith, the opening book entries of the partnership. The result, as thus shown, was the passing of the corporation and the emergence of the partnership. Nothing was paid and no property or cash was distributed. The assets, liabilities, and business of the corporation passed directly to the partnership. A partnership agreement was executed by petitioners individually and the six trusts through Chertoff and Mrs. Chertoff as trustees. The two trusts for each child were assigned jointly a one-fifth interest in the partnership and petitioners each had a one-fifth interest therein. The agreement provided that the partnership should continue for a period of ten years beginning January 1, 1941. Chertoff was to "contribute to the capital of said partnership his skill, knowledge and experience in the business * * * and his entire time, attention and $10,000 together with the right to the use of the name The Synthetic Products Co., which right he now has." The agreement constituted George the agent of each of the other partners and gave him exclusive control and management of the partnership business, with a compensation, exclusive of his share of the profits, equal to two percent of the sales.

It is true that the agreement provides that, "Notwithstanding the duties of George J. Chertoff as in this contract defined, the management of the partnership shall at all times be in the partners," yet it is obvious that his powers and duties in this respect can not be curtailed without his consent, since he is a cotrustee of the trusts holding a three-fifths interest in the partnership and also a holder in his own right of a one-fifth interest therein.

It is at once apparent that the continuance of Chertoff's absolute control of the business which he formerly conducted for the corporation throughout the latter's existence was assured under the partnership arrangement and also that his own economic interests were conserved and continued under the latter arrangement.

The provision of the trust instrument for paying the trust income to the beneficiary or his legal guardian was not observed by the trustees, but instead such income was accumulated. However, had the trust income been distributed in compliance with such provision it would have been paid in the taxable years by petitioners as trustees to themselves as guardians of the beneficiary. They would have received it in the latter capacity without restriction as to its use or purpose and accordingly could have invested and controlled it in a way to subserve their own economic interests under as broad powers as if it had been handled under the trust.

In addition to the fact that from the time of the creation of the trusts no distribution, either of income or principal, was made to the beneficiaries named, it should be borne in mind that during the taxable

years involved the corpora of the existing trusts were employed in the business of which George J. Chertoff was the sole manager at a lucrative compensation in addition to a share of the profits of the business, under contractual arrangement which could not be terminated without his consent.   It thus appears that petitioners have retained control of the business and the use of the trust estates therein through their power as trustees to control investments.   See *Anna Morgan*, 5 T. C. 1089. We think that for all practical purposes these petitioners continued to remain the substantive owners of the property constituting the corpus of these trusts.   As was said in *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491, affirming 3 T. C. 255:

> * * * Certainly, what in the hands of an outsider-trustee may only amount to administrative powers over property can well as to a settlor-trustee have more than a fiduciary significance or value in the nexus of previous ownership, family economics, technical dedication, and continued control. * * *

It is well established that in construing the effect of *Helvering* v. *Clifford, supra,* on such trust agreements, all the facts and circumstances surrounding the execution of the trust must be examined to determine whether or not there has been a real change in the economic position of the settlors.   No one factor is determinative.   It is the sum total of the different rights and powers that is important.   In the light of all the circumstances surrounding the creation of the trusts, can it be said that respondent erred in ignoring the separate entity of the trusts and taxing the income therefrom to the petitioners? Would we be justified in holding that the execution of the trust instruments effected a material change in the economic position of the petitioners?   We think not.

The contingencies set up in the trust instrument and the powers of control over the principal and income of the trust conferred upon the trustees, together with the power either to terminate the trust within the lifetime of the beneficiary or permit it to continue for his lifetime, and also to withhold or distribute to the beneficiary the income of the trust, creates such a problematical status in respect of the property interests of the beneficiary and the remainderman under the trust as to render it impossible to determine whether the beneficiary named or his appointee or the petitioners will ultimately receive the corpus and/or the income of the trust.   At least, it can not be said that, so long as the contingencies, controls, and powers hereinabove referred to continue, the beneficiary named, or any potential remainderman, has any measurable or determinable vested right in the trust property.   Also, the broad powers of management granted to the petitioners, the retention of the trust assets in the business conducted by George J. Chertoff, and the rights conferred upon petitioners by the laws of Ohio in so far as their children's property is concerned

all lead inevitably to the conclusion that the petitioners are taxable on the income of the trusts under section 22 (a) of the Internal Revenue Code, and we so hold. Under such circumstances we are impelled to hold that petitioners have retained such a bundle of rights in respect of the trust property as to amount, for Federal tax purposes, to substantial ownership thereof and that each is taxable on the income of the respective trusts which he created. *Helvering* v. *Clifford, supra; Rose Mary Hash,* 4 T. C. 878; affd., 152 Fed. (2d) 722; *Morris Eisenberg,* 5 T. C. 856. Cf. *Commissioner* v. *Estate of Holmes,* 326 U. S. 480.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

MURDOCK and LEECH, *JJ.*, concur in the result.

ARUNDELL, VAN FOSSAN, BLACK, TYSON, and DISNEY, *JJ.*, dissent.