M. Friedman, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 6206. Promulgated June 10, 1946.

*Matt Wahrhaftig, Esq.*, for the petitioner.
*W. J. McFarland, Esq.*, for the respondent.

HARRON, *Judge*: The only question for decision is whether petitioner is taxable under section 22 (a) upon income of three trusts of which petitioner is trustee, as respondent has determined. Respondent relies upon the following in support of his determination: *Helvering* v. *Clifford*, 309 U. S. 331; *Louis Stockstrom*, 148 Fed. (2d) 491; *Edison* v. *Commissioner*, 148 Fed. (2d) 810; *Funsten* v. *Commissioner*, 148 Fed. (2d) 805; *Williamson* v. *Commissioner*, 132 Fed. (2d) 489.

During the existence of the trusts to date, no distributions of income have been made to the beneficiaries, and all of the income has been accumulated and invested for the most part in stock of the paint company. The taxable years involved in this proceeding are 1940 and 1941, but the case has been submitted on a stipulation of facts which sets forth what additional transfers were made to the trusts and what investments were made of trust funds in 1942, 1943, and 1944. The income tax returns of petitioner show that the paint company was the corporation which earned the more substantial income of the two corporations of which petitioner was president.

The record in this case shows that by the end of 1944 the three trusts held all of the stock, 1,000 shares, of the decorating company, and most of the class C stock of the paint company, i. e., 3,586 shares out of 4,537 shares, as well as 2,622 shares (out of 34,505 shares) of the class B stock; that the trusts held title to parcels of land, with buildings, where the factory, the wholesale and retail store, and a branch store of the paint company were located; and that the trusts held title, also, to a lot.

During the period ended at the end of 1944 trust funds totaling $7,046.50 had been used to purchase stock from minority stockholders of the two corporations, who, it appears, were employees and not members of petitioner's family, and $3,750 had been used to purchase a one-half interest in a parcel of land with a building.

The broad and extensive powers of the grantor-trustee over the property of the trusts, including the power to vote stock held by the trusts in favor of the grantor, himself, as a director and/or officer of a corporation in which the trusts hold stock, together with the position which petitioner occupies as president of the two corporations the stock of which is held by the trusts, raise the question whether petitioner as the grantor-trustee of the trusts realizes and enjoys substantial economic benefits from the stock and other property despite his transfers to the trusts. See *Helvering* v. *Stuart*, 317 U. S. 154. On this point petitioner has failed to refute any presumption inherent in the respondent's determination under section 22 (a) that he does

not enjoy substantial economic benefits from the trusteed stock. This case, submitted on a stipulation of facts, presents a limited record. There is no statement of facts relating to the voting rights of any of the stock in question. This lack of evidence does not aid petitioner, but rather weighs against him and, in the absence of such material evidence, a presumption may not be made that any stock or any class of stock did not carry voting rights. The question to be decided turns upon the powers which the grantor-trustee of the trusts had over the property in the trusts and the income of the trusts. The failure of petitioner to dispel any suggestion that control over the stocks of the companies of which the grantor was an executive may have determined the manner of creating the trusts, *Helvering* v. *Stuart, supra,* constitutes a serious defect in petitioner's effort to overcome the prima facie correctness of respondent's determination. See *Anna Morgan,* 5 T. C. 1089, 1095.

There is no evidence about the operation of the businesses of the two corporations involved, but, since petitioner was the president of both corporations, it must be assumed that he was actively interested in both businesses. It is stipulated that he received salaries from both corporations. The fiduciary returns for the year 1941 indicate that no dividends were paid by the corporations in that year. Since no dividends were paid but petitioner received salaries from the corporations in 1941, petitioner was the only member of the family to receive any economic benefit from the corporations in that year. See *Anna Morgan, supra.*

The situation strongly suggests an instance of retention of corporate control by means of the creation of trusts. *Anna Morgan, supra; Frederick B. Rentschler,* 1 T. C. 814; *Lillian R. Chertoff,* 6 T. C. 266.

The trusts in question are long term trusts, to extend over twenty years, unless a trust is sooner terminated by the death of a beneficiary. During this entire period the grantor-trustee has the absolute power to control the paying out or the accumulation of the trust income and to determine what constitutes income and principal of the trusts. He may exercise absolute discretion to invade the principal and pay out whatever he desires for the support, maintenance, care, education, or welfare of a beneficiary, and this discretion is broad, for "welfare" is a general term which embraces a wide range of uses. This control of the purse is similar to that in *Louis Stockstrom, supra,* with the difference that there is lacking here the power to apportion income among various beneficiaries.

However, the question is determined not by consideration only of these broad powers over the use and withholding of income and principal, but also by consideration of the other broad powers of the

grantor-trustee over the property of the trusts. In this aspect of the case, it is clear that the grantor-trustee has the broadest possible powers. He may continue to conduct "any business transferred to this trust"; and he "shall have the right to deal with said property and every part thereof, that he would have if as an individual he were the absolute owner thereof." Thus, such broad powers of management and control in the grantor as trustee are similar to those existing in the *Stockstrom*, *Edison*, and *Funsten* cases.

The beneficiaries of the trusts were minors. The incorporated businesses were family-controlled, from which petitioner derived economic benefits. The creation of the trusts and the transfers of property to the trusts did not in any way, as far as the record shows, diminish petitioner's enjoyment of control over the property given to the trusts and the income derived from the property. Under the circumstances and in view of the broad powers of control over the property and the income of the trusts which remained in petitioner as trustee of the trusts, the issue is controlled by the *Clifford* case. Respondent's determination is sustained.

It should be said that petitioner on brief has correctly pointed out inaccuracies in inept statements in respondent's brief. We have, of course, taken note of such inaccuracies and have considered the issue independently.

Neither petitioner nor respondent has cited *Anna Morgan, supra,* (promulgated Nov. 26, 1945) ; and *Alma M. Myer,* 6 T. C. 77 (promulgated Jan. 16, 1946), because the briefs of the parties were submitted prior to the promulgation of those cases. In holding as we do in this case that petitioner is taxable on the income of the three trusts, we follow the *rationale* of the *Anna Morgan* case, which was controlled to a large extent by the *Louis Stockstrom* case. We said in *Anna Morgan, supra,* at p. 1095 :

In the aspect of the present proceedings that petitioners were in a position to accumulate trust income, add it to principal, and thereby succeed in changing the recipient from the income beneficiary to the remainderman, the situation is similar to that in *Louis Stockstrom,* 3 T. C. 255; affd. (C. C. A., 8th Cir.), 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719; and see *Stockstrom* v. *Commissioner* (C. C. A., 8th Cir.), 151 Fed. (2d) 353. The broad powers of management and control in the grantors as trustees were similar here to those existing in the *Stockstrom* case.

In one respect, however, they appear actually to be more extensive. Unlike those circumstances, the subject matter of the present trust was stock of corporations in which the petitioners were actively interested. * * *

In the *Louis Stockstrom* case (see 3 T. C. 255, 257), the trustee was authorized to deal with the trust estate in all ways that he would do if he were the individual owner thereof. The facts here closely resemble the facts in *Anna Morgan* in the following respects: The trustees

could permit the income of a trust to accumulate until the primary beneficiary became 30 years of age; upon the death of a beneficiary, the surviving children, if any, were to receive the benefits of the trust, and, if none, the trust was to be distributed to the surviving brothers and sisters of the beneficiary; the trustees had very broad powers of control over the trust property, so that they could treat the property of a trust as "if they were the owners thereof as individuals," and they could vote corporate stock and hold compensating offices in corporations in which the trust had an interest, and fix their own compensation. Also, in the *Anna Morgan* case, the trusts received stock of corporations which were owned by the taxpayers and paid salaries to one of the grantors of the trusts, and the net income of the trusts was invested from time to time in additional stock of the corporations.

Having in this case practically the same set of relationships, i. e., family-owned corporations, the grantor serving as trustee of trusts holding stock of said corporations, and the trustee having broad powers of control over the trust property, the trust income, and the trust principal, we must conclude that the *Anna Morgan* case is to be followed here in deciding whether or not this case is controlled by the *Clifford* case doctrine as applied in the *Louis Stockstrom* case. It is the degree of control which is determinative. In so doing, we take the view that this case is distinguishable from the case of *Alma M. Myer*, *supra*.

In the *Alma M. Myer* case, the petitioner created a trust on December 19, 1934, for the benefit of her son who was born on January 19, 1917, so that he was nearly 18 years of age at the time the trust was created. The trust was to endure until he was 30 years of age, at which time it was to terminate and the property of the trust was to be distributed to him. Thus, the trust was for a period of just about 12 years. The property transferred to the trust consisted of cash and numerous Federal, state, and municipal bonds. The grantor was the trustee, and she had the power to pay out or accumulate the trust income during the term of the trust. The trust was for a shorter period than the trusts here, and the grantor-trustee did not have any personal or business interest in the corporation, the stock of which was held by the trust. In the absence of any such interest in corporations, the powers of the trustee over the property of the trust were far less extensive than is the power of the trustee in the trusts here. The differences in the degree of control of the grantor-trustee throws this case out of the ambit of the *Alma M. Myer* case.

Reviewed by the Court.

*Decision will be entered for the respondent.*

ARUNDELL, VAN FOSSAN, BLACK, and TYSON, *JJ.*, dissent.