WARD WHEELOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5289. Promulgated June 12, 1946.

*William J. Duiker, Esq.,* for the petitioner.
*William D. Harris, Esq.,* for the respondent.

OPINION.

DISNEY, *Judge*: As seen from the facts above set forth, the Commissioner based the determination of deficiency upon section 22 (a) of the Internal Revenue Code and the powers of the petitioner under the trust instrument to control and manage the trust property and his retention of the substance of ownership of the principal, "due to the provision  \*  \*  \* that delivery of the proxies to vote the stock was to be made, only to your wife or to you, during the lifetime of each of you, and also that no stock  \*  \*  \* could be sold without the consent in writing of your wife or yourself"; and on brief the respondent urges that petitioner retained economic control of his contribution to the trust fund. Reliance is placed primarily upon the principles enunciated in *Helvering* v. *Clifford*, 309 U. S. 331, with citation of *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491. *John Stuart*, 2 T. C. 1103, is quoted. The petitioner argues, in short, that the trusts contain none of the elements deemed pertinent in the *Clifford* case or those following it.

In *Helvering* v. *Clifford, supra*, the Court said that "the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership" that the husband was properly found to be owner of the corpus. Since other cases likewise have indicated that taxation of trust income to a trustor depends upon retention of such control as approximates the substance of ownership, we scrutinize the facts in this case for such similarity to ownership. Since the *Stockstrom* case discloses that the grantor "lodged in himself as trustee a dominion over the trust property far in excess of the normal fiduciary powers under traditional chancery concepts," and had in addition to numerous and broad named powers, the power to deal with the property in any way as his own, it seems apparent that there is sharp contrast with the rights retained by the trustor in the instant case, and that that case offers little assistance here. The *John Stuart*

case merely refers to *Helvering* v. *Stuart*, 317 U. S. 154, as suggesting that control of stock of a company of which the grantors were executors might be an essential element in trust control, a fact found lacking in the *John Stuart* case.

Analyzing, then, the situation here at hand, we find, not the broad and detailed reservations to the settlor of both particular and general controls over trust corpus or income which were provided by the instruments in many cases considered, but only the following: (a) That the Ward Wheelock stock placed in trust could not, during the life of petitioner or his wife, be sold without the consent of either her or the settlor; and (b) that during her life she could designate who should vote the Ward Wheelock stock placed in trust, while after her death he should hold proxy so to vote the stock. It is to be noted that only after the death of his wife is the petitioner in fact given any power at all. Until her death she alone, and without his consent, could furnish the necessary consent for sale of stock, and she alone could designate who should vote stock. His wife was alive during the taxable years. Again, we observe that consent to sale of the stock, whether given by the wife or by petitioner, did not compel or control sale. In the decision of that question the other trustee would participate. Perry on Trusts, 7th Ed., § 411. In other words, the most that petitioner could do would be to consent to sale. He could not require sale even after his wife's death, and could not prevent it if his wife consented and the other trustee joined her in the desire to sell. When we see that prior to her death, and in the taxable years, he had no right to a proxy to vote the shares, the absence of those powers which elsewhere have caused taxation becomes conspicuous. We need not consider a situation which may possibly arise in other years in the contingency that his wife predeceases him, and he then has such power under the trust instrument. During the years here considered, the petitioner had, under the trust instrument, no *power* at all, no control at all, over either corpus or income. The respondent suggests that, with respect to the consent to sale, "The intent here is not clear," that "or" in the disjunctive is often interpreted as conjunctive, and that the more logical assumption is that petitioner's consent was also necessary. No room for such interpretation is left, for the language is clear: "consent in writing *either* of said MARGOT TREVOR WHEELOCK *or* of the SETTLOR." (Italics ours.) "Either * * * or" can not be construed as conjunctive.

We consider it plain, therefore, that, so far as trust provisions are concerned, petitioner not only did not retain, during these taxable years at least, that aggregate of powers so imperceptibly blending into the full concept of ownership as to preclude distinction from ownership, but that he retained in the trust instrument no powers or rights

at all. There is not even one of the necessary "bundle of rights" frequently found, and found "substantial" in the *Clifford* case, when we consider rights or power to control as retained by the trust instrument. In this connection, we remember that it is well settled that the terms of a trust instrument, and not the activities actually carried on under it, determine whether there is association taxable as a corporation. *Morrissey* v. *Commissioner*, 296 U. S. 344 (361); *Helvering* v. *Coleman-Gilbert Associates*, 296 U. S. 369. Though not suggesting that the statement is equally true here, we feel that these authorities do indicate that much weight should be given the trust provisions. We consider also the circumstances involved in the creation and operation of the trust. That the respondent relies upon such circumstances, rather than the terms of the trust itself, is shown in the argument that the petitioner was able to retain control over the stock "by virtue of the privilege, rightfully expected, that he would be designated to vote the stock of the Ward Wheelock Company during his wife's lifetime, and thereafter to vote the same in his own right * * *. Reference is also made to the petitioner's "undoubted assurance that he would be designated to vote the stock."

In substance, the view is that the fact that petitioner's wife was a trustee enabled him to exercise the control over the trust which has often elsewhere been treated as requiring taxation. That is to neglect, in our opinion, the essential concept involved in the words dominion, control, power, and rights, so often used on this question, and necessarily used in describing ownership. That concept is in essence inconsistent with the permission which the petitioner required from his wife before he could, in her lifetime, vote the stock (and since his consent was not required for sale of the stock so long as she lived, including the years here involved, and no other element can anywhere be found or is relied on, we see his position as completely dependent on his wife's permission).

We do not think that either in logic or in law we may base what amounts in tax law to ownership alone upon mere "rightful expectations" or "undoubted assurance" on the part of the husband as to what his wife would do. The history of divorce courts and the modern tendency toward recognition of separate legal rights in wives oppose such an approach. The wife had at all times after the trust was formed on December 1, 1938, more stock in the corporation than did the petitioner, and her interest in the welfare of her children, the beneficiaries, may not be said to be less than his. She might very conceivably have concluded that he was not properly managing the corporate business and have refused to cooperate toward his management. To the possibility of exercise of such power by his wife, the petitioner has clearly subjected himself.

Moreover, the respondent's theory, in effect that the wife is subservient to the husband, is not sufficient to dispose of the presence of Girard Trust Co. as cotrustee with the wife. The wife alone could not control the trust corpus or income; therefore, even complete subserviency on her part to her husband still left the cotrustee free from any such influence by the settlor, and left the settlor without those powers which in numerous cases have been considered so necessary to his control that they have been minutely detailed and carefully retained. Without such power over both trustees, the petitioner is seen to lack the control over the trust which is necessary to his taxation.

The argument is made that the advertising business was largely personal, dependent on the petitioner. (The business seems to have survived two years absence of the petitioner in the Army. Moreover, when it was started, at least, it appears to have depended on Armstrong, an advertising consultant and advisor, to the extent that $8,000 assets of his company were purchased and he was employed at the rate of $28,000 a year, for at least one and one-half years.) This appears to mean that the corporate advertising business depends so completely upon the personal efforts and personality of the petitioner that he controls the trust income because he could by his management of the corporation decrease its income and therefore that of the trust, e. g., if he were not given power to vote the stock, he could, at will, shut off trust income by causing the corporation to earn less. Such argument appears to us to assume that the petitioner, unless he is given command over the trust stock in the corporation to an extent no less than the equivalent of ownership itself, would sacrifice the financial interests of himself, his wife, and the children for whose support he is liable, and that no less power will be satisfactory or sufficient to prevent intentional sabotage by him of the business. Though discerning that he does in such respect hold to some extent a rod over the situation, we think it would be unrealistic to hold that it should be given the tax effect contended for by the respondent, for we would not be warranted in a conclusion that action so drastic and so against self-interest as intentional lessening of corporate activity or effect would be caused merely by petitioner's inability to exercise to practically the fullest extent the control usual to an owner. Taxation should be upon a base more stable than speculation as to what the petitioner might do, and assumption of his ability to "make or break" the business. A high salaried executive employed through exercise of the voting rights by the wife could conceivably produce business results equally as good as those produced by the husband.

The personal business argument, in any case, does not conceal the fact that the petitioner has surrendered not merely some, but almost, if not quite, all of his rights and powers which mean control and go

to constitute ownership. Those powers have passed to the wife and the other trustee, and petitioner may not recall them. He retained a hope, apparently with reason, that she would cooperate with him. But such a hope, or expectancy, is not ownership. Moreover, even given the proxy to vote all trust stock, the petitioner is seen still to lack control of the trust income; for, under such cases as *Phipps* v. *Commissioner*, 137 Fed. (2d) 141, and *W. C. Cartinhour*, 3 T. C. 482 (489), and others to the same general intent, the trustees for their beneficiaries would have effective appeal to a court of equity to prevent inequitable treatment of their interests, e. g., refusal arbitrarily to pay any dividends on their stock, however great the corporate earnings.

No case has been cited in which a trustor retaining so little of his former status has been taxed on the theory here presented. In none is mere relationship between husband and wife given the effect asked here, without elements of fact and trust instrument not to be found here. In *Frederick B. Rentschler*, 1 T. C. 814, the grantor's interest in the corporation the stock of which was placed in trust was only one of various circumstances contributing to the result, and lacking here.

In *Estate of William F. Hofford*, 4 T. C. 790, we reconsidered our opinion at 4 T. C. 542. The facts were that the sole owner of stock of a corporation and the sole manager thereof transferred all of such stock to six irrevocable trusts, one for his wife, one for his daughter, and one for each of his daughter's four children. A contract was entered into by which he was to remain sole manager of the corporation for life at a fixed salary, regardless of physical condition or ability to serve. No voting rights were reserved by the settlor, the trustees having all voting rights. The corporate stock could not be sold or otherwise disposed of without the settlor's consent (and after his death the consent of another). The petitioner argued that such provision did not represent a reservation of any interest in the stock, but merely a discretion to be exercised in good faith and solely for the benefit of the beneficiaries by the persons considered by the settlor as best qualified to determine the advisability of any sale of stock. For the reasons urged we reconsidered the case; and we held that the settlor did not retain possession or enjoyment of the income from the property, under section 811 (c) of the Internal Revenue Code. Clearly, we think, the cited case contains far more elements of reservation of control over income than the instant case; and, though involving a different statute, the underlying principles here involved do not differ. The case presents flatly the feature of personal control over the corporation. If there, with specific reservation of management, and stock sale control, for life, there was no retention under section 811 (c), there

is none here, where neither is reserved. One of the trusts there was for the wife, as in this case. See also *Lillian M. Newman*, 1 T. C. 921; *Alex McCutchin*, 4 T. C. 1242. We do not think the personal element idea should be extended to the length desired by the Commissioner. We conclude and hold that the petitioner is not taxable upon the income of the trust. Because of other minor issues,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

MURDOCK, *J.*, concurs only in the result.

———

HARRON, *J.*, dissenting: The question whether petitioner is taxable on dividends paid on stock which he gave to trusts for his children arises in connection with an unusual set of relationships. We have here a taxpayer who controls a family-owned corporation, of which he is president, and trusts, created by him, to which he has given the majority stock of the corporation under restrictions which he has imposed in the trust instruments. Although petitioner is not a trustee of the trusts, he is in a position to exercise control over the income of the trusts derived from the stock [1] because of the fact that he is the president of the corporation and the only person who votes all of the stock. The majority view gives more attention to the formal provisions of the trust instruments than to the relationship of petitioner to the corporation, the stock of which and the dividends of which are involved. I can not agree with the conception of the facts which the majority has adopted. I must respectfully suggest that the question is not adequately considered if we isolate the trust indentures and look only at the provisions thereof, and exclude from consideration the relationships which are present which represent the circumstances under which the trusts were created and administered. We must consider all the circumstances attendant on the creation and operation of the trusts, and we may not let "mere formalism obscure the normal consequences of family solidarity." *Helvering* v. *Clifford, supra.*

The majority concludes that "During the years here considered, the petitioner had, under the trust instrument, no *power* at all, no control at all, over either corpus or income." The emphasis is placed upon the "legal niceties" of the provisions of the *trust* instruments. I must strongly disagree with the conclusion that petitioner had no control over the income in question. Quite to the contrary, petitioner has as much control over the income in question as the grantor of trusts had in *Corliss* v. *Bowers*, 281 U. S. 376, albeit the trusts created by Corliss

———

[1] The issue presented relates only to the income of the trusts which is derived from Ward Wheelock Co. stock given to the trusts by petitioner.

were revocable trusts, whereas the trusts created by Wheelock were irrevocable trusts, as will be developed hereinafter.

In analyzing the circumstances attending the creation and operation of the trusts, the following facts are significant: (1) The petitioner was the owner of the majority stock of Ward Wheelock Co. prior to the creation of the trusts. His wife was the only other stockholder. The creation of the three trusts had the result of increasing the number of stockholders from two to five persons, but whether the stock of Ward Wheelock Co. was held by petitioner and his wife only, or by them and the three trusts, the ownership of the company was entirely within the family of petitioner. (2) It is not disputed that all of the earnings of the company were derived from advertising contracts, that one of the chief assets of the business was the list of clients, and that the success of the business in the taxable years was due primarily to the personal skill of petitioner in obtaining and keeping clients, which, in turn, depended upon petitioner's skill in creating and executing advertising campaigns.[2] It is not disputed that petitioner was the active manager of the business of Ward Wheelock Co. and its dominating and leading spirit. It thus appears that Ward Wheelock Co. was the incorporated personality of petitioner.

Of what significance is the above set of facts? The significance is that, if petitioner should decide to transfer his activities to some other business entity than the Ward Wheelock Co., as for example, by resigning from Ward Wheelock Co. and operating as a sole proprietor or under another corporation, the business of Ward Wheelock Co. would follow Ward Wheelock, wherever he decided to go; the clients surely would follow him, the employees of Ward Wheelock Co. probably would follow him, and Ward Wheelock Co. would become an empty nautilus. We are dealing here with stock in a corporation in which the taxpayer is the body which gives life to the corporation. In this situation, the power of petitioner to control the flow of the income of the corporation, as well as to promote the earnings of the corporation, must be considered along with the terms of the indentures of the trusts which hold most of the stock of the corporation.

Could petitioner control the income of the trusts? In considering this question we are concerned not with control over the distribution of trust income, after receipt by the trusts, to or among beneficiaries as in *Commissioner* v. *Buck*, 120 Fed. (2d) 775, and *Stockstrom* v. *Commissioner*, *supra*; but, rather, with the flow of income from the corporation to the trusts. In considering this question we come close to the

---

[2] It is noted in the findings of fact that F. Wallis Armstrong was to be engaged as a consultant and advisor to September 1, 1939. There is no evidence that he participated in the Wheelock Co.'s business in the taxable years 1940 and 1941.

*rationale* of *Corliss* v. *Bowers*, *supra*, where the Supreme Court, speaking through Mr. Justice Holmes, said as follows:

If a man direct his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid. It is answered that in that case he would have a title, whereas here he did not. But from the point of view of taxation there would be no difference. The title would merely mean a right to stop the payment before it took place. The same right existed here although it is not called a title but is called a power. The acquisition by the wife of the income became complete only when the plaintiff failed to exercise the power that he reserved. * * * if a man dispose of a fund in such a way that another is allowed to enjoy the income which it is in the power of the first to appropriate it does not matter whether the permission is given by assent or by failure to express dissent.

The net earnings of Ward Wheelock Co. could be treated in the following ways: They could be accumulated or distributed to stockholders. The net earnings before salary to Ward Wheelock, president, could be adjusted to a greater or lesser amount by decreasing or increasing the salary of Ward Wheelock. Thus, earnings could be paid out in varying amounts and percentages either to Ward Wheelock in salary or to stockholders in dividends.[3] It is clear that the person in Ward Wheelock Co. who has the deciding voice in voting for or against the declaration of dividends and the amount of the salaries controls the payment or the stopping of the payment of dividends—income—to the three trusts in question.

It is a fact that during the taxable years petitioner was the only person who cast a vote at the meetings of the stockholders of the Ward Wheelock Co., because he held the proxies of all stockholders besides himself. Petitioner's wife, though a director, never attended meetings of directors. There was a third director, Dunn, and it appears that he was an employee of the company. He was not a stockholder. Petitioner, as stockholder, as director, and as the holder of proxies to vote stock, was dominant in deciding into what channel or channels the earnings of Ward Wheelock Co. should flow, if at all. His hand was on the spigot. He could turn the spigot on or off as he chose. He could even turn off the water supply and leave the faucet dry.[4]

It is answered that the power to vote the majority stock, which was held by the three trusts, was not in petitioner, but was in his wife, under clause VII of the trust instruments. The majority opinion is founded largely upon this view. Petitioner's wife had no beneficial interest in the trusts. It is difficult to imagine that petitioner's wife would not vote the trusteed stock, if she voted at all, as petitioner

---

[3] In 1940 dividends were declared out of accumulated profits in the total sum of $104,000. The record does not show what the entire net earnings, accumulated profits, or the president's salary were in 1940. In 1941 dividends were declared out of accumulated profits in the total sum of $302,000, and the president's salary was increased to $74,500. The record does not show what the entire net earnings before president's salary were for 1941.

[4] By leaving the company and taking the business away with him.

might suggest to her; or that, if she did not vote the stock, she would give the proxies to anyone other than petitioner. In fact, she gave the proxies to petitioner. It should not require any argument that in this case, the facts and circumstances being what they are, the decision of the issue should not be made to turn upon the point that petitioner's wife was to designate to whom the proxies to vote the trusteed stock should be given. In the *Clifford* case the substance of enjoyment of powers by the grantor of a trust was considered as being the "result of the terms of the trust and the intimacy of the familial relationship," and the Supreme Court admonished against a holding the result of which would be "to treat the wife as a complete stranger," as well as "to let mere formalities obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements." Depending upon the facts, of course, courts have taken the view in many cases that a wife or close associate of the grantor of a trust, acting as trustee, would be almost certain to follow the wishes of the grantor who was not a trustee or who was a cotrustee. See *Hyman* v. *Nunan*, 143 Fed. (2d) 425; *Commissioner* v. *Lamont*, 127 Fed. (2d) 875; *Commissioner* v. *Barbour*, 122 Fed. (2d) 165, 167; *Altmaier* v. *Commissioner*, 116 Fed. (2d) 162; *Helvering* v. *Elias*, 122 Fed. (2d) 171, 172; *Commissioner* v. *Woolley*, 122 Fed. (2d) 167, 171.

Although the petitioner-grantor of the trusts in question did not name himself trustee or cotrustee of the trusts, he did expressly impose, by the terms of clause VII in each trust, limitations and restrictions upon the corporate trustee's power to deal with the Ward Wheelock stock. The trusteed stock can not be sold without the consent of either petitioner or his wife, and the corporate trustee can not vote the stock. Thus, under clause VII, control over the trusteed stock in the family-owned corporation is kept *within the family*.

Under the circumstances disclosed here, the fact that the husband was not a trustee may have given him greater power of control over the dividends constituting the chief income of the trusts. For, if he were trustee, he would be subject to the control of a court of equity in such matters as voting the stock. Here the wife fulfills her duty, under the trust instruments, in appointing petitioner to vote the trusteed stock. When he does so, he can exercise his vote without being necessarily influenced by the best interests of the trusts.

The question is difficult, of course, because the income to be taxed consists of dividends, and it would appear that a distinction should be made between command over income consisting of dividends after receipt by the trusts and command over income consisting of the earnings of the Wheelock Co. before they take the form of dividends and

go to the trusts. It would seem that, since petitioner irrevocably gave some stock of Wheelock Co. to the trusts, there is lacking in him the ownership of the property which yielded the income in question. The majority view is, I believe, committed to making such distinction in this case. However, I take the view that such distinction can not be made in this case under its special facts and circumstances. I must state clearly that I take the view in this case that ownership of shares of stock in the Wheelock Co. by the trusts did not carry with it the economic benefits and powers which, under the ordinary circumstances, the ownership of shares of stock in a corporation gives to the owner, having in mind the fact that in the usual case there is not present the situation which we have here of a family-owned corporation where the grantor of trusts, the head of the family, stands in the position in which petitioner stands. The point seems clearly demonstrated by the fact that petitioner, who owned 159 shares, a majority, retained only 15 shares after he created the trusts, but, nevertheless, without any contract with the holders of the majority stock, he continued to occupy exactly the same power and position in the Wheelock Co. when he had 15 shares as when he had 159 shares. See *Edison* v. *Commissioner*, 148 Fed. (2d) 810, where the court said:

* * * and, even though he [the grantor of trusts] may part also with control of the corpus of the gift as well as legal title, he equally may be taxable on the income which the property produces, where he has retained substantially his previous power, viewed in its practical significance in relation to the specific dedication, to command the disposition of the income. Cf. *Helvering* v. *Horst*, 311 U. S. 112.

See also, *Stockstrom* v. *Commissioner*, *supra*, where the court said, referring to powers retained by the grantor of trusts:

* * * and where, on the basis of such a continued enjoyment of the outer attributes of his previous ownership and possession, and of such a continued right to apply his earning powers and business skill to the property for the zest of the game and the further incrementation of the family pile, * * * he is willing * * * to divest himself of the formality of legal title.

See also, *Helvering* v. *Stuart*, 317 U. S. 154, where the Supreme Court pointed out that "Control of the stocks of the company of which the grantors were executives may have determined the manner of creating the trusts." In this case, control of the stock of Ward Wheelock Co. by petitioner yields important economic benefits to him, enabling him to be president and director of the company and, to the outside world, the same controlling and vital force in the game of running the business and getting the business, despite his transfer in trust of the majority stock and the reduction in his holdings to a mere fifteen shares.

Whether a taxpayer has assigned an interest in property, or has merely assigned income, is usually a difficult question. See *Harrison*

v. *Schaffner*, 312 U. S. 579; and *Blair* v. *Commissioner*, 300 U. S. 57. But, as was said in *Harrison* v. *Schaffner, supra:*

It is enough that we find in the present case that the taxpayer, in point of substance, has parted with no substantial interest in property, other than the specified payments of income which, like other gifts of income, are taxable to the donor.

See also, *Henry F. Haldeman*, 6 T. C. 266; *Anna Morgan*, 5 T. C. 1089; *Morris Eisenberg*, 5 T. C. 856.

Petitioner, with means beyond his needs, adopted the method of transferring stock in his family-owned corporate business to trusts for the accumulation in the trusts, rather than in himself, of large dividends from the stock, but he retained, in spite of the transfers of bare legal title to the stock, powers in the corporation which ordinarily accrue to the owner of stock. In such situation the rule of the *Clifford* case should control, and petitioner should be taxed under section 22 (a). Considering the elements of the situation, the family-owned incorporated business, the nature of the business, the economic powers and benefits enjoyed by petitioner, directly and indirectly, and the family relationship, the trusts created by petitioner have every appearance of being "contrivances to avoid surtaxes." *Henry F. Haldeman, supra.* If the trusts were not so designed, they were "strangely suited to that purpose." *Stix* v. *Commissioner*, 152 Fed. (2d) 562.

Furthermore, if a taxpayer can not escape tax by giving property away in trust, retaining, nevertheless, the power to dispose of the income among income beneficiaries, *Commissioner* v. *Buck, supra; Stockstrom* v. *Commissioner, supra*, he likewise should not escape tax where he can at all times decide whether there shall be payment of income to the trusts and the amount thereof. If the latter situation exists, as it does here, the shares of stock only designate the recipient of the dividend income, not the ownership of the underlying property from which the income is derived. *Harrison* v. *Schaffner, supra.*

TURNER, HILL, and OPPER, *JJ.*, agree with this dissent.