ESTATE OF O. M. BANFIELD, DECEASED, FRANK C. STIPES AND GENESEE COUNTY SAVINGS BANK, A MICHIGAN BANKING CORPORATION, ADMINISTRATORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111567. Promulgated September 25, 1944.

*Harry G. Gault*, *Esq.*, for the petitioners.
*Philip M. Clark*, *Esq.*, for the respondent.

OPINION.

OPPER, *Judge*: Petitioners contest the major portion of deficiencies of $5,149.71, $12,579.75, and $28,450.73 determined for the years 1938, 1939, and 1940, respectively, in the income tax of petitioner's decedent, hereinafter sometimes referred to as petitioner or decedent. One issue relating to the deduction of a bad debt has been conceded by respondent and will be given effect in the recomputation.

The record consists solely of an exhibit embracing our file in a prior proceeding, certain admissions in the pleadings, and a stipulation of the facts agreed to by the parties. All such facts are hereby found accordingly. Decedent filed income tax returns for the years in question, but the collection district is not shown.

The principal question is the extent to which petitioner is taxable on the income of certain trusts for the benefit of his wife and minor children. The property involved was a total of 480 shares of the stock of a corporation of which petitioner was a director and officer. Prior to the creation of the trusts he had owned 800 of the 2,400 outstanding shares of that company. Of the remaining shares, 800 were owned by L. H. Green, as trustee, and 800 by Ellis H. Warren. The period involved divides itself into two parts, as of December 9, 1940, by reason of certain amendments to the trust instruments made on that date.

As to the earlier period, it is stipulated that "the same issue presented in this proceeding, namely, the taxability of the income from these same three trusts created December 23, 1937, by O. M. Banfield * * * was presented to the then United States Board of Tax Appeals and decided by The Tax Court of the United States adversely to the petitioner * * *." The memorandum opinion in that proceeding (Docket No. 101313, entered January 14, 1943) recites that counsel for petitioner stated that "That same issue is present in the Warren case" and that "the parties stipulated in this case that the decision of the court in the *Warren* case should be dispositive of the issue presented." The case referred to is *Ellis H. Warren*, 45 B. T. A. 379, affd. (C. C. A., 6th Cir.), 133 Fed. (2d) 312.

The conclusion seems inescapable that the present question is thus identical with that disposed of in *Ellis H. Warren, supra*, and this the petitioner does not deny. Petitioner at first further "assumed that this Court * * * will come to a conclusion similar to that arrived at in the above described Warren case." It now, however, attacks the *Warren* case as wrongly decided, and urges that our recent opinion in *David Small*, 3 T. C. 1142, "has overruled the Ellis H. Warren decision."

If we were to adopt petitioner's proposition, it would then be necessary to consider respondent's argument that the question is in any

event *res judicata*, since although the claim is different, involving taxes for another year, the "issue" is stipulated to be "the same." Cf. *The Evergreens*, 47 B. T. A. 815. In the view we take, however, the point need not be further noticed, since we think that the *Warren* case continues to be authoritative and that application of the principle of *stare decisis* thus disposes of this aspect of the present proceeding.

It is true that the affirmance of the *Warren* decision was predicated upon *Helvering* v. *Stuart*, 317 U. S. 154, and that, as we said in *David Small, supra*, "Congress * * * in section 134 of the Revenue Act of 1943, * * * consummated a retroactive legislative repeal of the *Stuart* case * * *." But when the *Warren* case was decided by the Board of Tax Appeals, the *Stuart* opinion had not yet been handed down, and could not, of course, have been relied on. What was decided was merely that the sum total of Warren's controls brought the entire situation within the principle of *Helvering* v. *Clifford*, 309 U. S. 331. If the provision for possible support of Warren's dependents was considered at all—and it is not expressly mentioned in the opinion—it could have been no more than a contributing factor.

What we thought decisive in the *Warren* case was "the whole nexus of relations between the settlor, the trustee and the beneficiary" (*Helvering* v. *Elias* (C. C. A., 2d Cir.), 122 Fed. (2d) 171). The opinion points out that "The petitioner did have the right to buy and sell to the trusts property at prices to be determined by himself." Referring to *David M. Heyman*, 44 B. T. A. 1009, this was apparently looked upon as "equal to a power of revocation." The opinion dismisses as of little importance "the mere fact that they were declared to be irrevocable," pointing out that "the petitioner does not claim that he did not have the right to modify the trusts and the evidence shows that on December 9, 1940, he did modify them * * *."

Recognizing that the *Clifford* case dealt with a short term trust, and that "In the case of a long term trust, however, it must appear that the grantor has a greater degree of control over the trusts," the Board nevertheless took the view in the *Warren* case that "After the creation of the trusts the petitioner * * *was not required to distribute any part of the income to any of the beneficiaries during his lifetime. He had absolute voting rights of any shares of stock which became a part of the trust estates * * *." "* * * the petitioner and no one else during his life had control over the trust assets, both principal and income."

*David Small, supra*, was decided on the authority of *Frederick Ayer*, 45 B. T. A. 146, which the 1943 amendment was viewed as reestablishing. But the *Ayer* and *Warren* cases were decided within a month of each other. They were certainly not treated at the time as inconsistent and the *Warren* case did not purport to overrule *Ayer*. We

can see no reason now why they can not stand together. Consequently, the reliance on the *Ayer* case in *David Small* furnishes no basis for a present repudiation of *Ellis H. Warren.* See *Louis Stockstrom,* 3 T. C. 255; *Lorenz Iversen,* 3 T. C. 756. And of course the affirmance of the *Warren* case on the authority of *Helvering* v. *Stuart* is no demonstration that the case was wrongly decided below under section 22 (a). See *Williamson* v. *Commissioner* (C. C. A., 7th Cir.), 132 Fed. (2d) 489; *First National Bank of Chicago* v. *Commissioner* (C. C. A., 7th Cir.), 110 Fed. (2d) 448, 450; *Edward Mallinckrodt, Jr.,* 2 T. C. 1128, 1137.

Nor does the retroactive 1943 amendment impress us as having that effect, even though the discretionary payments for maintenance of the grantor's dependents were to some extent relied upon in the *Warren* case, which is by no means clear from the opinion. That amendment provides:

Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee or cotrustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. * * *

Although designed as an amendment to section 167, there can be little doubt that the result called for is equally required under any other provision of the income tax title, including section 22 (a). But on its face the legislative language disaffirms any intention to disqualify such elements from all consideration. The word "merely" imports the assumption that there may be other circumstances which, if accompanied by the described destination of the trust income, will in spite of the amendment require taxation of the grantor.

If there were doubt as to this construction the legislative history of the section would dispel it. Its enactment followed and was caused by the decision in *Helvering* v. *Stuart, supra,* which for the first time announced the principle that income available for payment to support a grantor's dependents would be taxable to him, whether or not it was devoted to such a use. The purpose of the legislation was to prevent the application of that rule and to reestablish the approach which had previously been adopted by the inferior tribunals. There was no intention to create still a third doctrine or one which would eliminate consideration of possible uses of the income where that consideration would previously have been given. As phrased by the Senate Finance Committee, S. Rept. No. 627, 78th Cong., 1st sess., p. 29: "Your committee believes that the rule in effect prior to the Stuart case is a sound rule and has inserted a provision in the bill to restore the old rule."

Even more illuminating is the statement (Ways and Means Committee, H. Rept. 871, 78th Cong., 1st sess., p. 51):

\* \* \* Nor does subsection (c) alter the principles governing the taxability of trust income to the grantor under some other provision of law. For example, trust income remains taxable to the grantor under section 22 (a) of the code if the terms of the trust, *not excluding the discretionary power to apply trust income*, and all the circumstances attendant on its creation and operation indicate that the grantor has retained a control of the trust so complete that he is still, in practical effect, the owner of its income. \* \* \* [Emphasis added.]

Thus, if a grantor were taxable prior to the amendment under section 167, it is reasonably clear that in the circumstances there described he would be free from tax not only under that section but under any other provision pursuant to which a parallel or supplementary liability might arise. But only where such a result would flow "merely" from the retained benefit of possible maintenance payments does the amendment interpose itself against taxation of the grantor. If, for example, there are controls, including other authority to deal with income and to manage the principal and its investment, which supplement and fortify that benefit, and which together lead to an application of the *Clifford* doctrine, we think it clear that it is not the maintenance provision "merely" which generates that result, and hence that the rule in that respect prior to the enactment of section 134 remains unchanged.

Petitioner views as the result of the amendment "that even though the absolute right to accumulate or distribute income of a family trust might have been a strong factor in determining whether the trust income was taxable to the grantor prior to the enactment of *Section 134* of the Revenue Act of 1943, the only income which may be now taxed to the grantor, where a trust for a wife or minor children is involved, is the income actually distributed," and that "*Section 134* \* \* \* has prohibited the application of *Section 22 (a)* to family trusts involving a wife and minor children." If this were valid, section 134 would have the effect of overruling not only *Helvering* v. *Stuart*, but *Helvering* v. *Clifford* as well, at least in discretionary maintenance trusts. For the reasons stated, including explicit language in the committee reports, we can not regard it as so far reaching. On the authority of *Ellis H. Warren, supra*, this portion of the deficiency is sustained.

What we have said, however, can have no application to the trusts as amended on December 9, 1940. On that date, petitioner renounced the power granted him to borrow from the trusts and to deal with them by way of sales of property unless the specific transaction should first be submitted to judicial scrutiny and found to be to the advantage of the beneficiaries. This alteration removes a basic ground for the decision in the *Warren* case, and leaves this aspect of the present pro-

ceeding virtually indistinguishable from *David Small*, *supra*. Income attributable to the period subsequent to the amendments and not actually expended for support of the beneficiaries we accordingly view as improperly charged to petitioner.

Respondent denies the effectiveness of the amendments, suggesting that the beneficiaries would approve any prospective dealing with the trust. But here more than their bare consent is required. The decision is committed to a competent court, which we can not suppose, particularly in the case of minors, would surrender its independent judgment to an acquiescence given improvidently or as the result of parental influence.

Nor does the plea of *res judicata* reach this aspect of the controversy. The amendments constituted such a subsequent change in the operative facts as to render ineffectual any prior adjudication. We are now considering the effect of differently constituted trusts. The "right, question or fact" to be decided, as well as the claim or demand, is no longer the same and the previous decision can not foreclose an independent consideration of the new record. *Blair* v. *Commissioner*, 300 U. S. 5.

Petitioner concedes that income which was in fact devoted to the permitted purpose of payment for expenses of the beneficiaries was properly included in decedent's income by virtue of the provisions of section 134. It further justifiably recognizes "that *Section 134* of the Revenue Act of 1943 is retroactively effective for years prior to 1943 only if certain requirements of paragraph (2) of *Subsection* (*b*) thereof are complied with. It is assumed that this Court will allow a reasonable time for petitioners to comply with these requirements, as was done in *W. C. Cartinhour*, 3 T. C. 482 (493) and *David Small*, 3 T. C. 1142." Regulations in this respect, not available for use in the *Cartinhour* and *Small* cases nor when the present proceeding was heard, have now been promulgated (T. D. 5392, C. B., Aug. 11, 1944, p. 18), and presumably they eliminate the occasion for any further delay in completing these preliminaries. We assume that they can now be made the subject of prompt accord between the parties.

Reviewed by the Court.

*Decision will be entered under Rule 50.*