OPINION. ARUndell, Judge'. The principal issue presented for decision is whether or not the income of the trust or trusts created by petitioner George Beggs by instruments dated July 9, 1934, and December 20, 1935, may be treated as the community income of petitioners despite the transfer in trust, under section 22(a) of the Revenue Acts of 1936 and 1938 and the Internal Revenue Code, and under the principle of Helvering v. Clifford, 309 U. S. 331. As stated in the Clifford case, the issue is whether the grantor, after the trust has been established, may still be treated as the owner of the corpus within the meaning of section 22(a), and the answer to the question depends upon “an analysis of the terms of the trust and all the circumstances attendant on its creation and operation.” The complex factors of this case, brought into proper focus, present a relatively simple picture. Petitioner George Beggs, desiring to create a trust for his children, conceived a long range plan for effectuating his desire. His plan was to set up a trust consisting of oil properties and then, as the oil properties were wasting assets, to have the proceeds thereof pay for ranch lands already owned by him, subject to purchase money mortgages. He was to be reimbursed for the consideration advanced by him in purchasing the ranch lands and for all expenditures made by him on the ranches, up to the time of the conveyance in trust and was to be paid interest thereon. In pursuance of this plan the trust, composed of the oil properties, was created March 16,1934, Some months later petitioner realized that this trust instrument did not empower the trustee to borrow money or to assume mortgages, powers essential to the operation of his plan. Without the consent of the beneficiaries, petitioner summarily directed the recon-veyance of the trust property to himself and then under a modified indenture, incorporating the desired powers, he retransferred the property to the same trustee. The following year, by separate instrument, he transferred the ranch lands in trust to himself and to his brother, who was the sole trustee under the first trust indenture. The second instrument stands by itself without reference to the first trust and contains different and more complete terms for the management and disposition of the property subject to it. Petitioner looked upon the two instruments as constituting one trust, used the one bank account for both, and maintained a single set of books for the two trusts. In fact the greater part, perhaps almost all, pf the income, came from the oil properties constituting the corpus of the first trust. Under the trust instrument of July 9, 1934, J. E. Beggs, petitioner’s brother, was sole trustee. However, it appears that petitioner, in fact, acted as cotrustee. The powers conferred upon the trustee by this instrument were “to manage, control, dispose of, sell and convey, any part or all of said minerals, and to borrow money thereon, or any part thereof, and * * * to execute mortgage or mortgages, assignments, transfers, and conveyances thereon, * * * and to pay to them [the children] in equal parts the proceeds and revenues therefrom * * Under the trust instrument of December 20, 1935, all of the usual broad powers of management ordinarily vested in trustees were conferred upon petitioner and his brother as cotrustees. It may be noted here that there was given them no power to lend trust funds to themselves or to anyone else. (This was also true of the trust instruments dated March 16 and July 9, 1934.) This trust provided specifically for the handling and disposition of the trust income, directing the application of the income first to the payment of the mortgage indebtedness and second to the payment of ordinary expenses, upkeep, taxes, and interest. Income over and above these items from the sale of land was to be accumulated and income from the leasing of mineral interests on the land was to be accumulated or distributed at the discretion of the trustees. Only income from the leasing of land or from sources other than the above in excess of amounts necessary to cover mortgage payments and expenses of upkeep was required to be distributed to the beneficiaries. The parties have argued at length the question of whether one or two trusts are involved here. Petitioner contends it was at all times his intention to create only one trust and that his treatment of the profits placed in trust is consistent with that intention. Respondent points to the separate and independent instruments, the different terms of the instruments, and to the fact that there were two trustees under the second indenture, to establish that there were two trusts actually created. Under our view of the question, however, this point makes but little difference. Upon analysis of the terms of the two instruments, there is nothing therein which could be considered to impeach the absoluteness of the transfers in trust. However, the manner of operation of the trust or trusts is significant. In the first place, the original trust of March 16,1934, was substantially modified by petitioner without the consent of the beneficiaries. Then he proceeded to borrow large sums from the trust, although the trustee was not authorized to lend money. After the second conveyance in trust in 1935, he continued as trustee to lend to himself, as an individual, large sums of money for personal and business reasons. As trustee he also loaned money to a partnership composed of himself and his two brothers. We are unable to say from an examination of the several accounts offered in evidence that interest was paid on any of these loans, although petitioner insists it was. Petitioner in his individual return claimed no deduction for interest paid in any of the years here involved. The fiduciary returns filed by J. E. Beggs, trustee, included interest received in gross income of the trusts for some of the years here involved, but the sums reported in those years bear no relation to the sums claimed to have been paid as interest by petitioner and the Beggs Bros, partnership. On this state of the record, we are unable to find as a fact that any interest was, in fact, paid by petitioner and by his partnership on the various loans to them. Premiums on four policies taken out by petitioner on his own life were paid out of the trust income from 1938 through 1941. These policies were not assigned to the trusts, but petitioner merely considered it proper for the trusts to pay the premiums on these policies, inasmuch as the beneficiaries of the trusts were also beneficiaries under the policies. Petitioners now concede that under the provisions of section 167 (a) (3) the portion of the trust income so used is includible in their income for those years. In addition, trust income was used to pay premiums on other policies which were not irrevocably assigned to the trust by petitioner. We think these circumstances are factors to be considered along with other indicia of ownership in determining taxability under section 22 (a). Another factor may also be observed relative to the disposition of the trust income. In all of the years here involved income in amounts determined by the trustee was used for the support, education, and maintenance of the minor children of petitioner, although there is no pro'vision in the trusts authorizing the use of trust funds for this purpose. Petitioners now concede the propriety of including the income so used in their community income under the rule of Helvering v. Stuart, 317 U. S. 154, as modified by section 134 of the Revenue Act of 1943. The 1943 amendment, however, does not operate to exclude the discretionary use of income in discharge of the parental obligation from all consideration. Such power still remains one of the factors to be considered among others in determining the applicability of section 22 (a). Estate of O. M. Banfield, 4 T. C. 29. Moreover, the ranch lands which petitioner transferred to the trust were continually used in petitioner’s business, or that of a partnership of which he was a member. Upon all of these facts, we are of the opinion that petitioner has retained such controls, and has actually enjoyed such direct economic benefits as to justify treating him as the continuing owner of the property transferred in trust, and so taxable on the income thereof. This, we think, is true even though the trust instruments do not spell out the retained controls and economic benefits lodged in petitioner. On this point the respondent is sustained. Helvering v. Clifford, supra; William C. Rands, 34 B. T. A. 1107. The second point concerns the correctness of the 5 percent penalty determined by respondent for delinquency in filing the returns for the year 1937. The returns were due March 15.1938. An extension was granted by the respondent upon request to April 15,1938. The returns were actually filed April 19,1938. Section 291 of the Revenue Act of 1936 provides that in case of any failure to file a return within the time prescribed by law or regulation, a 5 percent penalty shall be added to the tax for each 30 days of delinquency, not exceeding 25 percent in the aggregate, unless the failure is shown to have been due to reasonable cause and not to willful neglect. No reason at all has been advanced for the delay in filing the returns for 1937. Therefore, we must sustain the Commissioner in his determination. Decisions will be entered under Rule 50.