PRUDENCE MILLER TRUST, HAROLD A. MILLER AND JANE S. MILLER, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ACHSAH JANE MILLER TRUST, HAROLD A. MILLER AND JANE S. MILLER, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOANNE MILLER TRUST, HAROLD A. MILLER AND JANE S. MILLER, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7503, 7504, 7506. Promulgated November 29, 1946.

*Carl E. Davidson, Esq.*, and *Charles P. Duffy, Esq.*, for the petitioners. *Leonard A. Marcussen, Esq.*, for the respondent.

ARUNDELL, *Judge*: Whether the gifts in question were in trust is important here because of the fact that, if the income is trust income, each trust is entitled to an exemption of only $100, whereas, if it is the individual income of the children, each child is entitled to a personal exemption of $750 and the earned income credit. Petitioners contend that no trusts were intended or created and that the income in question was the individual income of the children. We agree.

From 1930 through 1939 Stimson's gifts of securities to his granddaughters were issued to their individual names. Stimson told the Millers that these were gifts to the children and that the Millers would have to handle the properties until the children themselves were able to take care of them. No conditions were imposed on the gifts. Stimson suggested that the Millers start separate sets of books for their children and keep records of receipts and expenditures—a practice which the Millers have followed. He testified positively that he did not intend to create a trust; that in view of his past experience with different kinds of trusts that was one of the last things he wanted to do; that he expected the Millers to manage the property in a reasonably prudent manner while their children were minors; that he had at times discussed with Harold Miller the question of a legal guardianship for the children's property, but told Harold that so far as he was concerned that was not necessary and, in substance, that he thought the children's investments managed by their parents were in better hands than they would be under a trust, legal guardianship, or other formal arrangement subject to strict court supervision.

Stimson's categorical denial of intent to create a trust, of course, would not be conclusive in the face of other evidence clearly and convincingly demonstrating or manifesting a trust intent. But we find nothing in his actions inconsistent with or contradictory of his positive testimony concerning his intent. Cf. *Edward H. Heller*, 41 B. T. A. 1020, 1033.

In managing and dealing with the gift properties over the course of the years Harold Miller sometimes used his name alone, sometimes the child's name by him, or by him as "father," or by him as "trustee." He testified that he used the term "trustee" simply to designate that the property was not his, but belonged to the child, and we are satisfied that such was his purpose. In any event, in the absence of an intent on Stimson's part to create a trust, nothing either Harold or Jane Miller might do with the property could have the effect of creating the kind of trust which is a separate taxable entity within the contemplation of the revenue laws. Express trusts, and not constructive trusts, are the ones to which the statute is applicable. See *Stoddard*

v. *Eaton*, 22 Fed. (2d) 184. On the whole Harold Miller's testimony is corroborative of Stimson's with respect to the circumstances under which the gifts were made and further supports the conclusion that Stimson had no trust intent in making them.

The first gifts of securities which were not issued in the name of the particular child-donee were those of shares of stock in the Marine Bancorporation in 1940. Stimson testified that he had nothing to do with the issuance of the certificates in the names of Harold and Jane Miller as trustees, but that his intent in making those gifts was no different from his intent in making the previous gifts in earlier years. Miller thereafter experienced some difficulty in connection with a contemplated transfer or sale of some of the Marine Bancorporation stock because it was registered in trustee form, and for that reason he requested Stimson to have the securities given in December 1941 issued in his and Jane Miller's names as tenants in common to facilitate transfers. The letters written by Stimson in connection with these gifts were likewise written at Harold Miller's request and for his purposes. Again, Stimson testified that his intent in making these gifts was the same as in making the previous gifts of securities which were issued direct in the names of the children. His intent was not changed by the fact that these securities were issued in the parents' names as tenants in common.

Respondent devotes much of his brief to a dissertation on the law of guardianships and contends that the parents of the Miller children, as natural guardians, would have no legal right to meddle in the property of the children. Even if that be so, and assuming that in the event of mismanagement the parents may be answerable in equity to the children, it does not follow as a matter of law that the parents are trustees of an express trust. If anyone would have cause to complain, it would be the children, not the respondent.

We think it is of no particular moment in the present proceedings what designation, whether natural guardian or other, is applied to the Millers. Although in strict contemplation of law it may have been more proper for them to apply for appointment as legal guardians to manage the estate of the children, their desire to avoid the expense and complications of such a procedure is understandable. As a practical matter, it is certainly not unusual for parents to manage the property and attend to the affairs of their minor children without such formalities. See *Edward H. Heller*, *supra*. It was only natural for Stimson to expect his daughter and son-in-law to do that in connection with the property he gave to their minor children, his granddaughters. But he imposed no conditions on the gifts to the children or binding legal obligations on the parents. Suggestions made by him as to the handling of the property were only precatory

in nature. We are unable to find in this record that evidence of trust intent upon which to predicate the creation of express trusts.

The total gifts from E. C. Miller, the paternal grandfather of the children, were inconsequential in amount and might well be ignored for purposes of these proceedings. However, from what we have already said, it is apparent that the mere fact that Jane Miller handled these gifts and deposited them in separate savings accounts in her name as trustee for the children can not have the effect of creating express trusts thereof.

We conclude that all the gifts were outright, that no taxable trusts existed, and that the income in question was the individual income of the children, to whom it is accordingly taxable.

Reviewed by the Court.

*Decisions will be entered for the petitioners.*

---

TURNER, *J.*, dissenting: It is my view, on the facts found and appearing herein, that the letter of Charles W. Stimson under date of December 15, 1941, as a matter of law, effected the creation of an express trust and that the Court's conclusion to the contrary is in error. Direct gifts to the granddaughters had been made in prior years and had proved troublesome and unsatisfactory in so far as the subsequent management of the property was concerned, and the parties, for good and sufficient reasons, decided that subsequent gifts should not be direct, and it is my view that the duties and obligations conferred upon and accepted by Harold A. Miller and Jane S. Miller were under the law trust duties and obligations. I do not regard the question decided as a question of fact, or as a matter of mixed law and fact, but a question of law, and it is my view that the Court erred in reaching its conclusion.

I accordingly note my dissent.