OPINION. Van Fossan, Judge: With respect to the issue under section 167, Internal Revenue Code, the basic facts here presented are quite similar to those found in Arthur L. Blakeslee, 7 T. C. 1171. In that case we first discussed the applicability of section 167 and cited David Small, 3 T. C. 1142, reaffirmed in Estate of O. M. Banfield, 4 T. C. 29, as authority for holding that income not actually used for the support of the beneficiary was not taxable to the grantor. We do not construe the terms of the^trust before us as permitting the petitioner, the trustee, to devote the trust, income and corpora to the discharge of his parental obligation to support and maintain his infant children, as argued by the respondent. On the contrary, the provision specifically states that only in the event of “accident, sickness or unforeseen emergency,” can the trust income or corpus be so expended. The power given to the trustee thus to use the funds of the trust is to be exercised only if the parent is unable to fulfill parental obligation to his children. It does not supersede that duty or relieve the parent of his obligation. During the taxable period before us no such accident occurred and no emergency arose. Consequently, no expenditures were made under the quoted provision. Therefore, section 167 is not applicable to the cases at bar. We now turn to the taxability of the income under the provision of section 22 (a). At the outset, the respondent’s counsel contends that the taxability of the trust income to the grantors must “depend on an analysis of the terms of the trust and of circumstances attendant upon its creation and operation.” (Clifford v. Helvering, 309 U. S. 331.) We agree that this principle is fundamental in determining the applicability of section 22 (a) under the Clifford rule. Arthur L. Blakeslee, supra. We have only to apply it to the facts of each case. There is here no factual controversy, since the facts have been stipulated. Therefore, the decision rests on the reasonable inferences that may be drawn from those facts. We consider first the facts relating to the creation of the trust and then those surrounding its operation. The trusts were created for the exclusive use and benefit of the beneficiaries. That purpose is so stated in the trust instrument. The petitioner was engaged in the somewhat hazardous occupation of training aircraft mechanics and engineers. The petitioner owned 53,500 of the 100,000 outstanding shares of Industries, of the par value of $1 per share. On December 29,1938, the petitioner and his wife created the two trusts for their children’s benefit and transferred to each trust 5,000 shares of Industries as its corpus. The corpora of both trusts constituted less than orie-fifth of the stock owned by the petitioner. After April 24, 1939, the petitioner’s own stock, plus that owned by the trusts, constituted a minority of the stock of both Industries and Aero-Crafts. In view of the relatively small value of the trust estates, the uncertainty of receiving dividends from the stock, the lack of stock control of the corporations, the comparatively small fraction of the petitioner’s stock transferred to the trusts, and other circumstances of record, we have no ground for concluding that the trusts were created to provide a means of continuing the control of the corporation, originally held by the petitioner, for his own personal and pecuniary gain. The economic ownership of the trust stock was not retained by him. The terms of the trust make clear the facts that the trust income was definitely and irrevocably set aside for the children’s use and enjoyment and that the petitioner and his wife could receive no immediate or ultimate benefit therefrom. As trustee, the petitioner was given broad powers of management, but, as has been held often, such powers in themselves do not impute to him economic ownership of the corpus or of the income therefrom. Frederick Ayer, 45 B. T. A. 146; Alma M. Myer, 6 T. C. 77; Ward Wheelock, 7 T. C. 98. Thus, in the trust itself and from the events concurrent with its creation, we find no reason to invoke the Clifford rule. United States v. Morss, 159 Fed. (2d) 142. There remains for consideration only the respondent’s contention that the operation of the trusts brings the situation within the Clifford rule. He asserts that “the trust property was actually used for the economic benefit of the grantor.” He builds his argument largely on (1) the alleged use of the trusts’ stock to further his own interests and to secure salary increases and, (2) the petitioner’s alleged transgressions of the strict terms of the trust in the purchase of the beach house at Balboa and of the two boats. The stipulated facts do not support the respondent’s contentions. The petitioner received his salary, dividends, and other compensation directly from Industries and its successor, Aero-Crafts. The amount and condition of such payments to him had no relation whatever to the trusts’ ownership of stock in the corporation and could not have been affected by that circumstance. The majority of the stock was held by others, who recognized pecuniarily the value of the petitioner’s services to the company. His reelection to office in June 1942 (a date subsequent to the taxable years) was accomplished by the aid of minority stockholders, organized by Reagan & Co., without whose assistance he could not have been reelected. Any economic benefit gained by him on that occasion came solely from that source and was not due to his holding or voting the trust stock. The respondent charges that the petitioner’s purchase and use of the beach house and the boats evidence a personal benefit and gain to him. The record shows that the beach property was purchased as an investment of the trusts and was so treated on the books of the trustee. A one-half interest therein was listed as an asset of each trust. No rent was paid currently for the occupancy of the house by the petitioner’s family during 1940 and 1941, but this error was rectified sometime prior to March 18,1943, upon advice of the petitioner’s counsel. We attach no significance to the petitioner’s holding title in his own name. Apparently it was so placed to avoid complications in case of sale, since the children were infants. The petitioner declared it to be trust property on his books aqd so holds it: The petitioner also repaid to the Calvin Ralph Hemphill trust the cost of the boats. Whether or not this repayment was necessary w@ do not say, but obviously it was made from abundance of caution. We do not hold that these minor irregularities, if such they were, on the part of the petitioner as trustee, transform an income otherwise taxable to the trusts into income taxable to him individually. The intent and purpose of the creation of the trusts were solely for the benefit of the children and we see in the petitioner’s treatment of the trust property, in his capacity as its trustee, nothing to contravene that fundamental fact. See Cushman v. Commissioner, 153 Fed. (2d) 510. Reviewed by the Court. Decisions will he entered under Rule 50. Turner, Leech, Hill, and Opper, JJ., dissent.