CURTIS A. HERBERTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7049, 11149. Promulgated June 7, 1948.

W. L. *Nossaman, Esq.,* and *Harry W. Elliott, Esq.,* for the petitioner.

*H. Arlo Melville, Esq.,* for the respondent.

## OPINION.

KERN, *Judge*: While the respondent contends in the income tax proceeding that the petitioner is taxable under the provisions of both sections 22 (a) and 167 of the Internal Revenue Code, he relies primarily on the general principles set forth in *Helvering* v. *Clifford*, 309 U. S. 331, and his principal contention is that petitioner is taxable under section 22 (a). The income in question is traceable, with a minor exception, to transfers of the Herberts Machinery Co. stock by the petitioner either to or for the benefit of his children.

It is necessary, therefore, to consider first the effect of those transfers.

*Pre-1941 transfers.*—The petitioner made outright gifts of 1,900 shares of the Herberts Co. stock to each of his children and of 600 shares to his wife, all prior to 1941. Certificates for 1,300 shares were issued in Evelyn's name and she was named as joint tenant with her mother in certificates for 1,200 shares (the equivalent of 600 shares

each) ; certificates for 1,900 shares were issued in the name of Curtis, Jr. There was no trust, oral or written, at this time. The petitioner's intention to make absolute gifts of the stock is shown by the evidence. The issuance of the stock certificates in the names of the children and wife is equivalent to a delivery of the stock to them, under the laws of California,[1] even though the petitioner retained the certificates for safekeeping. See *Jean v. Jean*, 207 Cal. 114; 277 Pac. 313; *Lynch v. Lynch*, 124 Cal. App. 454, 456; 12 Pac. (2d) 741. See, also, *Kathryn Lammerding*, 40 B. T. A. 589; affd., 121 Fed. (2d) 80. The acceptance of beneficial gifts is presumed under the laws of California. See *Yano's Estate*, 188 Cal. 645, 649; 206 Pac. 995; *Herman v. Mortensen*, 72 Cal. App. (2d) 413, 419; 164 Pac. (2d) 551. On all the evidence, we have found that the petitioner did not intend to reserve for himself, and did not reserve, any economic benefit or gain either from stock which he gave to his wife and children prior to 1941, or from the income thereon; and did not retain as to this stock any substantial rights of ownership. We hold that the pre-1941 transfers, which embrace 4,400/9,200, or 11/23, of the total stock in question, were complete and effective gifts by petitioner to his children and wife.

On January 20, 1941, the petitioner caused the foregoing certificates of stock to be transferred to himself as "trustee" for his children. However, it was beyond the petitioner's authority to dispose of stock owned by and standing in the name of his children and wife. It was equally beyond his authority to transfer this stock to trusts which he created, or purported to create, in 1941 and subsequent years. *James T. Pettus*, 45 B. T. A. 855; see *Lawrence Miller*, 2 T. C. 285. Cf. *Frank E. Joseph*, 5 T. C. 1049. It follows that the Commissioner erred in taxing 11/23 of the income in question to the petitioner.

In the petition there is an allegation to the effect that respondent erred in taxing to petitioner the income reported by Curtis A. Herberts, Jr., in his individual return for the year 1942, and that this income was from stock given to Curtis, Jr., by petitioner and not from stock included in a trust for his benefit. The only evidence bearing upon this point is a schedule introduced by petitioner as an exhibit indicating that 1,000 shares of Aerco Corporation stock was a "Gift from C. A. Herberts," and acquired by Curtis, Jr., in 1940, and was "exchanged for 55 shares Bank of America stock" in October 1942. This is not sufficient evidence to warrant a conclusion that respondent

---

[1] Sec. 327, Civil Code of California, provides:

"Upon surrender to the secretary or transfer agent of the corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books."

erred in his determination that the sums of $225 as dividends, and $367.40 as capital gains, less deductions of $64.43, were taxable to petitioner as "owner of the stock." A similar allegation was made as to income reported for 1942 by Evelyn J. Herberts in her individual return. No income was reported in this return; the statement attached to the deficiency notice does not show that respondent taxed any such income to petitioner; and no evidence was offered as to this allegation. Therefore, as to these items our decision is against petitioner.

*1941 transfers.*—On January 20, 1941, the petitioner caused additional shares of the Herberts Co. stock to be transferred from his name to himself as "trustee" for his children. A certificate for 2,100 shares was issued to him as "trustee" for Evelyn, and a certificate for 2,700 shares was issued to him as "trustee" for Curtis, Jr. The petitioner contends that these transfers were absolute gifts to his children, at least in legal effect, because either (1) no trusts were created on January 20, 1941, or (2) if trusts were created, they were executed forthwith. He argues under the first point that he held the Herberts Co. stock in his name as "trustee" merely as a matter of convenience, similar to the ways in which properties were held by parents for their children in *Edward H. Heller*, 41 B. T. A. 1020, and *Prudence Miller Trust*, 7 T. C. 1245. In both of those cases we held that there was no intention to create trusts, but that there was an intention to make outright gifts. In the present case the evidence indicates, with reasonable certainty, that the petitioner intended to create a trust for each of his children and that he did not intend to make outright gifts of the stock. By 1941 Evelyn's condition had become grave and could no longer be considered as a temporary aberration (her mental illness began in 1936, a year after the first outright gift of stock had been made to her), and the petitioner had engaged in conversations with his attorney in regard to the trust device as a protection for his family. Under these circumstances we can not ignore the significance of the petitioner's action in transferring the stock to himself as "trustee" for his children, rather than to the children individually, as in the case of the pre-1941 transfers. We think it is clear that he did not intend to make outright gifts to his children on January 20, 1941. That fact alone is sufficient to distinguish the cases relied upon by the petitioner. The petitioner contends in the alternative that if trusts were created on January 20, 1941, they were executed forthwith. He argues that such trusts were dry, or passive, since he had no active duties to perform, and, therefore, that the full legal and equitable title passed at once to the children. He relies on numerous cases, of which *LaFleur* v. *Burns Lumber Co.*, 188 Cal. 321; 205 Pac. 102, is a typical example. In that case a declaration in writing that a certain judgment was "in trust" for another party was held to create a valid trust under the

California statute.[2] It was a passive trust, because the only purpose was to acknowledge that the entire fee interest was in the beneficiary. On the other hand, in *Wittfield* v. *Forster*, 124 Cal. 418; 57 Pac. 219, there was a conveyance of real and personal property "in trust" for a named lodge. In that case the Supreme Court of California held, under the same statute, that "the language employed in the instrument is entirely too vague and uncertain to constitute a valid trust. The duration of the estate attempted to be granted to the trustee, the nature and quantity of interest which the beneficiaries are to have, and the manner in which the trust is to be performed, are all left undeclared and without any reasonable certainty; and, of course, there is no statement of any of the purposes for which, under section 857 (since repealed), an express trust may be declared. And this uncertainty also makes the attempted trust as to the personal property void." The court said that in such case, while the instrument clearly showed an intention to create a trust, either the trustee took no title or there was a resulting trust to the grantor or his heirs. It has been said of these cases that "A distinction should be noted between those trusts which fail because the trustee, having no specified duties, merely holds in trust for a designated person, and those which are bad because the trustee's duties or the beneficiary's rights are uncertain." Nossaman, Trust Administration and Taxation, vol. 1, § 44, p. 42. In the instant case, as we have already said, the petitioner did not intend by the transfers of January 20, 1941, to make outright gifts to his children. By the same token we think it is clear that he did not intend to create trusts for no purpose other than to convey the legal title to the children. We are persuaded that he intended to retain the legal title in himself as trustee, that he intended to retain some powers and perform some duties as trustee, and that he intended that these things should be done for the benefit of his children. Under these circumstances we think that the trusts of January 20, 1941, may not be construed under the laws of California as mere dry, or passive, trusts. Consequently, we hold that the full legal and equitable title did not pass to the petitioner's children under those trusts. If we consider as in our opinion we must, the purported trusts under which petitioner held the stock transferred to him as "trustee" on January 20, 1941, to be intended by him as real or active trusts, it is unnecessary to decide, in this proceeding, whether the trusts were valid or invalid. While they have been treated as parol trusts, they were created by the designation of the petitioner as

---

[2] Sec. 2221, Civil Code of California, provides:
"Subject to the provisions of section eight hundred and fifty-two [relating to trusts of real property], a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:
"1. An intention on the part of the trustor to create a trust, and,
"2. The subject, purpose and beneficiary of the trust."

"trustee" on the stock instruments; by no word or act did the petitioner indicate with reasonable certainty the purpose of the trusts. For present purposes, therefore, these trusts may be regarded either as valid revocable trusts under the laws of California,[3] or (and we are more inclined to this view) as invalid for want of certainty, on the authority of *Whitfield* v. *Forster, supra*. In either case, petitioner is taxable upon the distributions made prior to December 9, 1941, upon the Herberts Co. stock transferred from his individual name to the name of himself as "trustee" on January 20, 1941. If the trusts were invalid, there was no error in taxing the petitioner under section 22 (a) as the owner of the stocks in question. If the trusts were revocable, the petitioner is taxable on the income from such stock under section 166 of the code. *Erik Krag*, 8 T. C. 1091; *George S. Gaylord*, 3 T. C. 281; affd., 153 Fed. (2d) 408. See, also, *Corliss* v. *Bowers*, 281 U. S. 376.

On or about December 9, 1941, petitioner executed the written trust instruments, known as the Reay trusts, and, as trustee thereunder, acknowledged the receipt of the Herberts Co. stock held in his name as trustee since January 20, 1941. The Reay trusts were irrevocable and there was no element of uncertainty in their terms which would warrant a question of their validity under section 2221, Civil Code of California. If the purported parol trusts of January 20, 1941, were invalid (as we are disposed to think they were) there can be no question of petitioner's right to transfer the stock (other than that given outright to the children prior to January 20) to the Reay trusts. If the parol trusts were valid they would be revocable, by virtue of the California statute already quoted. Consequently, petitioner, in either event, had the right to transfer to the Reay trusts the stock owned by him individually, or as trustee, and, after December 9, 1941, the Herberts Co. stock (other than that owned by the children) was held by him as trustee under irrevocable trusts with definite terms. Therefore, we must now decide the question whether the petitioner is taxable as grantor of these trusts under sections 22 (a) and 167 of the Internal Revenue Code. The respondent contends that all of the income in question is taxable to the petitioner under the principles of *Helvering* v. *Clifford, supra*, and related cases. He argues, in short, that the petitioner's repeated attempts to retract what he had done previously show the requisite power and control over the corpus and income of the trusts to bring this case within the purview of the *Clifford* doctrine. We consider first, therefore, the circumstances attendant upon the creation and operation of the various trusts.

There were no further formal transfers of the Herberts Co. stock

---

[3] Sec. 2280, Civil Code of California, as amended in 1931, provides in part as follows: "Unless expressly made irrevocable by the instrument creating the trust, every voluntary trust shall be revocable by the trustor."

after January 20, 1941. However, the petitioner purported to hold the certificates issued on that date under various trusts, successively, until the Herberts Co. was dissolved on October 17, 1942. First, he acted under the parol trusts, hereinbefore mentioned, which, if valid, were revocable. Then, on or about December 9, 1941, he held the certificates under the Reay trusts, consisting of the Evelyn trust No. 1 and the Curtis trust, both of which were irrevocable. Subsequently, on an unknown date, the petitioner executed the Elliott trusts, which were also irrevocable. The provisions of the Reay and the Elliott trusts are identical, except that the latter contain a provision for the ultimate merger or consolidation of the trusts in a trust which might be established thereafter by the petitioner. He purported to hold the properties of the Reay trusts under the Elliott trusts during a period which can not be determined on the present record. In any event we regard the execution of the Elliott trusts as immaterial to the present question. It is significant, however, that the rights of the beneficiaries under the Elliott trusts (identical to the rights under the Reay trusts) were to be protected in the event of a merger or consolidation of the trusts.

The Evelyn trust No. 2 was a revocable trust. It was executed nominally by the petitioner's wife on an unknown date in 1942, for reasons unexplained by the present record. This trust consisted of property (the Aerco stock which the petitioner had received as trustee under the parol trust for Evelyn, and which, in some unknown way and for some unknown purpose, was given by him to his wife in order that she might establish this trust. Under these circumstances we regard this trust as what the petitioner on brief concedes it to be, i. e., an agency of the petitioner under the Reay or Evelyn trust No. 1, or as a trust of which petitioner was, in reality, the grantor. The taxability of its income will be determined by the same considerations applicable to the Evelyn trust No. 1.

The Herberts trust was established in January 1943 as an irrevocable trust. The petitioner was a grantor of this trust in several capacities, including that of "trustee" for each of his children. The properties of the Reay or the Elliott trusts were transferred to the Herberts trust. The income in question for 1943 was distributable to the petitioner as "trustee" for each child. The provisions of the Herberts trust differ in many respects from those of the Reay and the Elliott trusts. There are minor differences in the rights of the beneficiaries and in the powers of the trustees. The differences are probably immaterial in this proceeding. To the extent that they may be material, however, we think that the provisions of the Reay trusts are controlling. Cf. *Estate of John W. Neal*, 8 T. C. 237, where a decedent created an irrevocable trust during his lifetime which he purported to change by amendments beyond his powers under the trust. We held that his

attempts to do so were insufficient to make the corpus of the trust includible in his gross estate under section 811 (d) (2) of the code. We said that he did not actually have such powers under the trust. In *Lewis W. Welch*, 8 T. C. 1139, 1148, we said in part as follows:

As a general rule, after a trust has been created and the rights of the beneficiaries have become vested, 'in the absence of a power of modification reserved, the trust may not be altered or modified to the prejudice of the beneficiaries without their consent. However, it is permissible to modify the trust where the interests of the beneficiaries are not prejudiced thereby. Cf. *Boyd* v. *United States*, 34 Fed. (2d) 488; Restatement of the Law of Trusts, ch. 10, sec. 338 (2); *Estate of O. M. Banfield*, 4 T. C. 29. * * *

The respondent treats the various trusts as a scheme for tax-saving purposes. He gives a prominent place in his argument to *Sewell* v. *United States*, 73 Fed. Supp. 957, recently decided by the Court of Claims. In that case, notwithstanding a state court decree to the contrary, the Court of Claims held that the taxpayer had retained control and dominion over stock which he purported to transfer to his wife. The facts showed, among other things, that the stock certificate was kept in the corporate stock book, that it was endorsed in blank by the taxpayer's wife, and that the stock and the dividends thereon were at all times available to the taxpayer with his wife's consent. The dividends were used in part by him, and in part by the wife to pay family expenses. The facts in that case are clearly distinguishable from the present facts. In the instant case the petitioner took technical liberties with the trusts which he created, or purported to create, which are shocking to one trained in the law, but in all of his actions he scrupulously observed and protected the substantial rights of the beneficiaries. We are not persuaded by the record that petitioner disregarded, or intended to disregard, the real purpose of the trusts, which was to protect his children, for the sake of furthering any ulterior purpose of benefiting his own selfish interest. In our opinion, technical infractions of duties as trustee by a settlor-trustee, or actions taken by him under a misconception of law, can not, of themselves, warrant a disregard for tax purposes of the trusts so long as the trusts are administered in such a way as to indicate that they have reality and substance. Nevertheless, for reasons other than those advanced by the respondent in his brief, we think that the petitioner is partially taxable on the present facts for each of the taxable years after 1941.

The trust income and capital gains for 1942 are involved in this proceeding under the provisions of the Current Tax Payment Act of 1943. The trust income for that year was received by the petitioner as trustee under either the Reay or the Elliott trusts, which were identical in all material respects. The petitioner was the grantor and the trustee under those trusts for each of his children, respectively. He reserved broad powers of management. The properties of those trusts

consisted primarily of stock in the Herberts Co., which the petitioner controlled (at least prior to the execution of the trusts). Here the similarities end. The provisions for the distribution of the income and principal of the trusts were different in the case of each child.

The Evelyn trust No. 1 provided that the petitioner was to distribute such portion of the income as in his sole discretion was reasonably necessary for the care, maintenance, and support of Evelyn during her lifetime. He also had discretionary authority to use the principal of the trust for that purpose. Upon Evelyn's death the trust estate was to be distributed in equal shares to the petitioner and his wife, or the survivor, with provisions over if neither survived. Under those provisions we think that the petitioner had the power to accumulate the income from the trust for the benefit of the remaindermen rather than for the benefit of Evelyn. The facts show that he did not distribute any of the income for the benefit of Evelyn during her lifetime. Thus, he could and did control the ultimate disposition of the income from the trust. When that power is combined with all the other powers and circumstances, we think that the petitioner retained the equivalent for tax purposes of an economic ownership of the property in question. *Stockstrom* v. *Commissioner*, 148 Fed. (2d) 491; certiorari denied, 326 U. S. 719. Cf. *Commissioner* v. *Buck*, 120 Fed. (2d) 775. Accordingly, we hold that the Commissioner did not err in taxing the petitioner under section 22 (a) on the income and capital gains received and realized for Evelyn during her lifetime, except as to those portions hereinbefore excluded from the trusts. This applies to the year 1942 and part of 1943.

The Curtis trust presents a different problem for the year 1942. While the petitioner had the power to accumulate the income therefrom, he had no power or control over the final destination of that income. Curtis, Jr., was entitled to receive the principal and the undistributed income of the trust estate when he arrived at the age of 21. The difference between the trusts for Evelyn and Curtis, Jr., is aptly illustrated by the difference between the trusts involved in *Alex McCutchin*, 4 T. C. 1242; affd., 159 Fed. (2d) 472. On the other hand, the petitioner had the power to distribute such portion of the income as in his sole discretion was reasonably necessary for the care, maintenance, support and education of Curtis, Jr., a minor, whom he was obligated to support under the laws of California.[4] That provision brings the petitioner within the rule of *Helvering* v. *Stuart*, 317 U. S. 154, in which the Supreme Court held that income available for the discharge of a grantor's parental obligation is taxable to him, not-

---

[4] Sec. 196, Civil Code of California, provides:
"The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability."

withstanding the fact that the income was not used for that purpose during the taxable year.

The petitioner contends that the *Stuart* case is distinguishable and, in the alternative, that it is inapplicable. He argues, first, that, since the primary duty to support a minor rests upon his parents, in California, the estate of the minor can not be used where the parents are able to fulfill that obligation. See *Ex parte Carboni*, 46 Cal. App. (2d) 605, 613; 116 Pac. (2d) 453; *In re Keck*, 100 Cal. App. 513; 280 Pac. 387. But those cases do not involve trusts in which a power to make payments for the support and maintenance of a minor beneficiary is expressly granted to the trustee by the settlor, as in the present case. In *J. M. Leonard*, 4 T. C. 1271, 1287, we held that the fact that the trustee had the power to use income for support and maintenance "only in the event the grantors as parents are unable to support the beneficiary" was sufficient to distinguish the *Stuart* case, where the grantors actually fulfilled their obligation. In *Lillian M. Newman*, 1 T. C. 921, and *David L. Loew*, 7 T. C. 363, cited and relied upon by petitioner, there was no power expressly given to the trustee to use the trust income for the support and maintenance of the minor beneficiaries. Thus, in the three cases upon which petitioner bases his argument on this point, the power of the trustee to use the trust income for the support and maintenance of minor beneficiaries was, in one case, contingent upon an unfulfilled condition, and, in the other two, was not expressly granted by the settlor, and, because of state law, would not be inferred. In the instant case the trustee had the express and unconditional power to use the trust income for the support and maintenance of the minor beneficiary. The fact that the settlor-trustee was also under the personal statutory obligation to support and maintain the minor beneficiaries is material for the purpose of establishing the basis for the application of the *Stuart* case rather than for the purpose of distinguishing it. We hold that the *Stuart* rule applies to the income of the Curtis trust in question for the year 1942, subject to the following considerations.

The petitioner next relies upon section 167 (c) of the code, as added by section 134 (a) of the Revenue Act of 1943,[5] which modifies the *Stuart* rule, and, so petitioner contends, renders the rule of that case

---

[5] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

* * * * * * *

(c) Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee or cotrustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed. In cases where the amounts so applied or distributed are paid out of corpus or out of other than income for the taxable year, such amounts shall be considered paid out of income to the extent of the income of the trust for such taxable year which is not paid, credited, or to be distributed under section 162 and which is not otherwise taxable to the grantor.

inapplicable here. Section 167 (c) is made applicable to the year 1943 by section 134 (b) (1), and it is further made applicable retroactively to the year 1942 by section 134 (b) (2) of the Revenue Act of 1943 [6] upon the filing of prescribed consents in accordance with regulations of the Commissioner. The petitioner filed the prescribed consents, but he filed them after the time prescribed by the Commissioner in Regulations 111, section 29.167–3. We construe the filing of the consents and amended returns, and the covering letter of petitioner's attorney, as constituting a request for an extension of time. The regulations provide that the Commissioner may grant a reasonable extension of time "if request for such extension is filed with the Commissioner prior to the date heretofore fixed for the filing of the consent or within a reasonable time thereafter, and a showing is made to his satisfaction (1) that unusual circumstances exist, such as a case involving taxation of the grantor under the rule of *Helvering* v. *Clifford*, (309 U. S. 331), and (2) that the granting of the extension will not jeopardize the interests of the Government." The retroactive effect of section 167 (c) for the year 1942, consequently, depends upon whatever action the Commissioner may take prior to the final decision in this proceeding under Rule 50, provided that his decision be not arbitrary or in abuse of his discretion. See *J. M. Leonard*, *supra*, p. 1287; *W. L. Taylor*, 6 T. C. 201, 207, 208. If the Commissioner, in his sound discretion, allows an extension of time and accepts the filing of the consents, decision on this issue (i. e., the taxation of the income of the Curtis, Jr., trust for 1942) will be entered for the petitioner. The parties may advise us as to the action of the Commissioner in this regard in proceedings under Rule 50.

The trust income and capital gains in question for the year 1943 were received and realized initially by the petitioner and others as trustees under the Herberts trust. They were distributable to the petitioner as "trustee" for Evelyn and Curtis, Jr., respectively, under either the Reay or the Elliott trusts. We have already held that the rights of the beneficiaries under those trusts are controlling. We have already held that the income distributable to the petitioner as "trustee" for Evelyn until the date of her death during 1943 is taxable to him under section 22 (a).

---

[6] Section 134 (b) (2), Revenue Act of 1943, provides as follows:

"(2) RETROACTIVE EFFECT.—The amendments made by subsection (a) shall also be applicable with respect to all taxable years to which such amendments are not made applicable under paragraph (1), in the same manner as if such amendments had been a part of the revenue laws applicable to such taxable years, but only if there are filed with the Commissioner (in accordance with regulations prescribed by him with the approval of the Secretary) at such time and by such persons as may be prescribed under such regulations, signed consents that there shall be paid, at such time as the Commissioner may prescribe, all of the taxes under Chapter 1 of the Internal Revenue Code or under the corresponding provisions of prior revenue laws which would have been paid for the taxable years concerned if such amendments had been a part of the revenue laws applicable to such taxable years."

The income distributable to the petitioner as "trustee" for Curtis, Jr., during 1943 is not taxable under *Helvering* v. *Stuart, supra.* Sec. 167 (c), *supra.* The facts show that the income in question was not used for the support and maintenance of Curtis, Jr., during the year 1943. It was not, in fact, distributed until April 8, 1946. The question remains whether the petitioner retained economic benefits of any other nature upon which he is taxable under section 22 (a). We think not. While he had broad powers of management under all of the trusts mentioned herein, the circumstances attendant upon the creation and operation of the trusts show that his administrative powers were exercisable primarily for the benefit of the beneficiaries of the trust. The Herberts Co. was dissolved in 1942 and its assets were transferred to the Herberts trust, thereby eliminating the only circumstance which might have suggested that his administrative control was exercisable primarily for his benefit. See *Ward Wheelock,* 7 T. C. 98. It is unnecessary to decide for present purposes whether the petitioner's administrative powers are defined by the Reay trusts, the Elliott trusts, or the Herberts trust. In any event, those powers, though broad, were exercisable by the petitioner in a fiduciary capacity. Standing alone, they would not justify a conclusion that the trust income was taxable to petitioner. *United States* v. *Morss,* 159 Fed. (2d) 142; *Hall* v. *Commissioner,* 150 Fed. (2d) 304; cf. T. D. 5488, 1946–1 C.B. 19, as amended by T. D. 5567, 1947–2, C.B. 9. We hold that the Commissioner erred in taxing the petitioner under either section 22 (a) or section 167 (relating to income for benefit of grantor) on the income distributable to him as "trustee" for Curtis, Jr., during the year 1943.

In the gift tax proceeding there were originally three issues which involved (1) the value of the Herberts Co. stock at the date of the gifts, (2) the amount of the specific exemption available to the petitioner, and (3) the exclusions allowable under section 1003 (b) (2) of the Internal Revenue Code, as amended by section 454 of the Revenue Act of 1942. The first two issues have been settled by stipulation. The remaining issue arose out of the disallowance by the Commissioner of two exclusions of $4,000 each which the petitioner claimed with respect to the Herberts Co. stock transferred on January 20, 1941, from his name to himself as "trustee" for his children. The respondent contends that the transfers were "gifts in trust" within the meaning of section 1003 (b) (2), as amended, which allowed no exclusion for such gifts. The petitioner states at the conclusion of his original brief that "the gift tax deficiency should be found as claimed by respondent, except that the stipulated value of $8 per share of Herberts Machinery Co. applies." Thus, the sole remaining gift tax issue has clearly been abandoned by the petitioner. In his reply brief, however, petitioner attempts to raise an issue not stated in the

pleadings by contending that the value of the gifts should be further reduced if the petitioner is held "constructively chargeable with the tax on the income from the donated property" by computing the value of a (constructively) reserved life estate pursuant to Regulations 108, section 86.19 (f). We do not pass upon the merits of that argument, because it does not rest upon any issue properly before us. There are now no issues presented by the pleadings or the record which require us to decide whether the transfers in question are taxable as gifts, or, if so, what value should be assigned thereto.

*Decision will be entered for the respondent in Docket No. 7049. Decision will be entered under Rule 50 in Docket No. 11149.*